[S. F. No. 6691. In Bank.—August 23, 1913.]

BENJAMIN APPLE, Plaintiff, v. J. H. ZEMANSKY, Registrar of Voters, and Secretary of the Board of Election Commissioners of the City and County of San Francisco; JOHN P. HARE et al., Members of the Board of Election Commissioners of the City and County of San Francisco, and THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Defendants.

MUNICIPAL CORPORATION—AMENDMENTS TO CHARTER OF SAN FRANCISCO. The provision in the amendment to the charter of San Francisco (Stats. 1911, p. 1661) that "if there is any conflict between two or more measures or between two or more charter amendments adopted at the same election, then the measure or charter amendment receiving the highest affirmative vote shall prevail," refers solely to future elections, and does not purport to furnish any guide or rule to be applied in considering other amendments ratified at the same election at which the amendment in which it is contained was ratified.

ID.—ELECTIONS AND TERMS OF OFFICE—AMENDMENTS TO CHARTER NOT CONFLICTING.—The amendments to the charter of San Francisco by adding section 38a to article XVI, thereby providing a four-year term for certain officers, and the amendment of chapter II of article XI, providing a different method of nominating and electing candidates for office (Stats. 1911, p. 1661), are not in conflict. The only object of the second amendment is to provide a different method of

election, without contemplating any change in the term of any officer. The first amendment has to do entirely with terms of office, and was legally made a part of the charter, and constitutes the law of San Francisco as to the terms of the officers therein named.

ID.—AMENDATORY PROVISION—INTERPRETATION AND VALIDITY.—The provision in the above section 38a, that "the provisions of this section shall be deemed amendatory," is not void as an attempted "amendment" of various unspecified provisions of the charter some of which were not then in existence. The word "amendatory" simply means that the provisions of section 38a shall be controlling on the subject specified.

ID.—AMENDMENT OF CHARTER—SUBMISSION OF ALTERNATIVE PROPOSITION.—The provision in section 8 of article XI of the constitution, relative to freeholders' charters, that "in submitting any such charter, or amendments thereto, any alternative article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others," had no application in the adoption of the amendment of chapter II of article XI of the charter of San Francisco, providing a different method of nominating and electing candidates for office, nor in the adoption of section 38a of article XVI, providing a four-year term for certain officers; each being a single, distinct proposed amendment, dependent in no way upon any other proposed amendment in so far as the matter of adoption or nonadoption was concerned.

ID.—SUBMISSION OF ALTERNATIVE PROPOSITION—CONSTITUTIONAL PROVISION—WHETHER MANDATORY OR PERMISSIVE.—In so far as the constitutional provision refers to the presentation of an alternative proposition for actual submission, it is simply permissive. There is no compulsion resting on anybody, so far as this is concerned, no legal duty to present an alternative article or proposition for submission. But when such an alternative proposition is proposed it must be submitted for ratification by the people, and must be voted on separately, and there is nothing else that is mandatory about the provision, except that the right to present for submission an alternative proposition may not be denied the legislative body of the city or the requisite number of electors.

APPLICATION for a Writ of Mandate compelling the defendant registrar to certify and file the plaintiff's declaration of candidacy for nomination and election to the office of coroner of San Francisco.

The facts are stated in the opinion of the court.

Frank H. Buck, A. C. Keane, and George B. Keane, for Plaintiff.

Percy V. Long, Thomas V. Cator, John F. English, Henry N. Beatty, Thomas E. Curran, Francis Dunn, Chas. N. Fickert, and E. F. Moran, for Defendants.

ANGELLOTTI, J.—This is an application by plaintiff for a writ of mandate compelling the defendant registrar to certify, subscribe, and file his declaration of candidacy for nomination and election to the office of coroner of the city and county of San Francisco at the primary and general municipal elections to be held respectively on September 30, 1913, and November 4, 1913. An alternative writ of mandate was issued and a return thereto by demurrer and answer has been made. There is no conflict as to any of the material facts.

It is admitted that plaintiff is entitled to the relief sought if, under the provisions of the freeholders' charter of the city and county of San Francisco, a coroner is to be nominated and elected at such elections. The registrar refused to accept plaintiff's declaration upon the theory that under the provisions of the charter, a coroner was elected in the year 1911 for a term of four years commencing January 8, 1913, and that the term of office of the person so elected does not expire until January 8, 1916. If this theory be correct, there will be no nomination or election of a person to serve as coroner until the municipal elections of the year 1915.

The San Francisco freeholders' charter enacted under the provisions of section 8 of article XI of our constitution, was originally ratified by the people in the year 1898, and approved by the state legislature in the year 1899. (Stats. 1899, p. 241.) Many amendments have been made thereto in the manner provided by the constitution. At the time of its enactment, and until certain proposed amendments ratified by the people November 15, 1910, were approved by the legislature on February 23, 1911 (Stats. 1911, p. 1661), it provided in section 1 of the chapter on municipal elections (chap. II, art. XI), that each of the officers shall be elected for two years, except police judges and the assessor, each of whom shall be elected for four years; the superintendent of public schools who shall be elected for four years, and justices of the peace, as to whom special

provision was made. The same section provided for a municipal election in each odd-numbered year, and another section provided for the taking of office by the officers elected in January following.

On November 15, 1910, there were submitted by the board of supervisors of said city and county to the people for ratification thirty-eight proposed amendments to the charter, some of which were submitted by the board of supervisors on their own initiative, and others in pursuance of petitions signed by the requisite number of electors of said city and county. Among those were three which are responsible for the present controversy.

Amendment No. 7 was one proposed by the requisite number of electors, and submitted in pursuance of a petition presented to the board of supervisors, requiring its submission. It amended chapter II of article XI relating to elections, to which we have heretofore referred, in many respects, the whole chapter as proposed to be amended being set forth. No change whatever was made in section 1 of said chapter relative to the term of office of the various officers, nor was any change made in the provisions of other sections as to the time when the officers elected should take office. The changes related entirely to the method of nominating and electing candidates. It substituted for the old method a primary nonpartisan election, at which a majority of all the votes cast as to an office was essential to election thereto, and a subsequent general election to fill the offices as to which there had not been a choice at the primary election. The only candidates at the general election for any office were to be those who received the highest number of votes for such office at the primary, not exceeding twice the number to be elected. The whole object of the proposed *amendment* was, apparently, to make this change in the existing law, the only change in section 1 being to provide, in order to comply with the new matter contained in the other sections, that instead of the elections theretofore provided for, there should be, on a prescribed date in each odd-numbered year, an election to be known as the "Primary municipal election," and on a subsequent prescribed date, a "General municipal election." Other sections of the proposed amendment provided in great detail for such matters as were necessary under the new method, such as the way of declaring one's candidacy for an

office, the signing of certificates, the candidate's statement to electors, the form of ballot, the rotation of names thereon, etc. At the election of November 15, 1910, there was a total vote of 45,889. This amendment was ratified by the people at such election, the vote therefor being 33,671, and the vote against it being 7,469.

Amendment No. 9 was one proposed by the supervisors on their own initiative. It proposed the addition of a new section to article XVI, to be numbered section 38a, "relating to the terms of officers." The proposed section was as follows:

"Section 38a. The terms of office of the mayor, county clerk, auditor, district attorney, sheriff, coroner and nine of the eighteen supervisors shall be four years, commencing January 8, 1912, and the term of office of the tax-collector, recorder, city attorney, public administrator, treasurer and nine of the eighteen supervisors shall be two years until the eighth day of January, 1914, and thereafter shall be four years.

"Thereafter all the terms of the officers herein named shall be four years. The nine supervisors receiving the highest number of votes at the municipal election held in 1911 shall be the supervisors whose terms shall be four years from January 8, 1912, and the terms of the nine supervisors receiving the next highest number of votes at said municipal election shall be two years from January 8, 1912; *provided,* that if it should be impossible to determine the highest number of votes by reason of others having received the same number of votes, then those so tied shall choose by lot the four-year term. At each general municipal election officers shall only be chosen to succeed those whose terms expire in the month of January next following. The provisions of this section shall be deemed to be amendatory of all other provisions in the charter relating to the terms of the officers herein named, whether heretofore existing or contained in sections amended in other respects concurrently with the adoption of this amendment."

This amendment was ratified by the people at such election, the vote therefor being 28,108, and that against it 11,130.

Amendment No. 6 was one proposed by the requisite number of electors and submitted in pursuance of a petition. It proposed to add three new chapters to article XI, relating to the initiative, referendum, and recall. Section 7 of chapter II, the chapter devoted to the initiative, provided as follows:

"Sec. 7.   When there are two or more measures proposed to secure the same general purposes, the board of election commissioners shall so declare, and shall have the ballots so printed that the voter (first) can choose between any measure or none, and (second) can express his preference for any one.   If a majority of the votes on the first question is affirmative, then the measure receiving the highest number of votes shall become law, and the others shall fail of passage.   In case two or more measures are tied for the highest vote, they shall be resubmitted at the next ensuing general election.   If there is a conflict between two or more measures or between two or more charter amendments adopted at the same election, then the measure or charter amendment receiving the highest affirmative vote shall prevail.   No ordinance or measure approved by the electorate under the provision of this chapter shall be subject to veto, or be amended or repealed except by vote of the electorate, unless such ordinance or measure shall otherwise provide."

It is further provided (sec. 12, chap. III) that "the provisions of this chapter, unless prohibited by the state constitution, shall apply to the proposal, submission, and adoption of charter amendments."   This amendment was ratified by the people at such election, the vote therefor being 21,651 and that against it being 17,663.   These three amendments, so ratified by the people at the election held November 15, 1910, together with fifteen others so ratified at the same election, were approved by the state legislature by concurrent resolution on February 23, 1911.   (Stats. 1911, p. 1661.)

The foregoing are all the facts essential to a determination of the controversy before us.

It is clear that amendment No. 6 may be eliminated from consideration.   It was not a part of the charter until its approval by the state legislature on February 23, 1911, and could not be effectual for any purpose until that time.   In line with all the other provisions of chapter III thereof, section 7 purported only to lay down rules for elections on measures to be held subsequent to its adoption.   There is absolutely nothing therein to give color to the claim that it was intended to affect in any way any measure or amendment voted on by the people prior to the date of its approval by the legislature, and of course there is no presumption that any retroactive effect

was intended. The provision thereof that "if there is any conflict between two or more measures or between two or more charter amendments adopted at the same election, then the measure or charter amendment receiving the highest affirmative vote shall prevail," refers thus solely to future elections, and does not purport to furnish any guide or rule to be applied in considering amendments 7 and 9, ratified at the same election at which the amendment in which it is contained was ratified. It is therefore immaterial to this controversy that amendment 7 received more votes than amendment 9. If there be any irreconcilable conflict between amendments 7 and 9, the effect must be determined regardless of the provisions of amendment 6. In this view of the matter, the claim of defendants that if this provision be construed as applicable to charter amendments, it is opposed to the provisions of our state constitution on the subject of such amendments, also becomes immaterial, and we do not desire to be understood as expressing any opinion thereon.

The matter of freeholders' charters in "cities" and "cities and counties," and amendments thereto, has always been regulated to some extent, since the adoption of the state constitution of 1879, by certain provisions contained therein. In so far as the constitution purports to regulate this matter, it is, of course, controlling. The constitutional provision pertinent here is section 8 of article XI, as amended November 6, 1906. It provided for the framing of a charter by freeholders elected for that purpose, the submission of the same to the qualified electors of the city or city and county at a general or special election, and its submission to the state legislature for approval or rejection as a whole "if a majority of such qualified electors voting thereon shall ratify the same." It was provided that "if approved by a majority vote of the members elected to each house, it shall become the charter of such city, or such city and county." It then provided: "The charter, so ratified, may be amended . . . by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof at a general or special election, . . . and ratified by a majority of the electors voting thereon, and approved by the legislature as herein provided for the approval of the charter. Whenever fifteen per cent of the qualified voters of the city shall petition the legislative authority

thereof to submit any proposed amendment or amendments to said charter to the qualified voters thereof for approval, the legislative authority thereof must submit the same. *In submitting any such charter or amendments thereto, any alternative article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others.*" The italics are, of course, ours, and they are used to indicate a portion of the section specially relied on by plaintiff. The effect of this constitutional provision was necessarily to make any proposed amendment which was regularly submitted, in accordance with its provisions, to the people on November 15, 1910, ratified by a majority of the electors voting thereon, and approved in the manner required by a majority of the members of each house of the legislature on February 23, 1911, a part of the charter, from the date of legislative approval, possessing equal force to that possessed by any other amendment ratified at the same charter election and approved by the legislature on February 23, 1911.

Assuming for the moment that both amendments 7 and 9 were so regularly submitted, ratified by the electors and approved by the legislature, all in strict accord with the constitutional provision, with the result that they both became parts of the charter on the date of the legislative approval, we are confronted with the claim that they are in conflict on the question of the terms of office of certain officers. It is unnecessary to determine what the effect would be if there were an irreconcilable conflict between two charter amendments adopted at the same time under such circumstances as we have here. We think it is clear that there is no such conflict here. As we have seen, the only apparent object of amendment 7 was to provide a different method of election. There was no intention to change any provision as to the term of office of any officer, for no change was proposed by the amendment in that regard. On the other hand, amendment 9, being section 38a of article XVI, had to do entirely with the matter of terms of office, and to put all question of conflict, not only with amendment 7, but also with other provisions and proposed provisions of the charter, out of the way, contained this provision, viz.: "The provisions of this section shall be deemed to be amendatory of all other provisions in the charter relating to the terms of the officers herein named, whether hereto-

fore existing or contained in sections amended in other respects concurrently with the adoption of this amendment.'' Language could not have been used that would have more clearly expressed the intention that this section, if adopted as a part of the charter, should be the last word in the charter on the subject of the terms of office of the officers named therein, and should prevail over all other provisions of the charter which might be claimed to be inconsistent therewith. This intent, so clearly expressed, must, of course, be deemed to have been the intent not only of those who framed and submitted the amendment, but also of the people who voted for it at the charter election, constituting a majority of the electors voting thereon, and also of the members of the legislature voting to approve it. In the face of this language, taken in connection with the fact that the only changes proposed in existing laws by any of the other amendments were changes ''in other respects'' than this matter of terms of office, it is impossible to find any irreconcilable conflict between amendments 7 and 9.

We know of no reason authorizing a conclusion that the declaration in amendment 9 that ''the provisions of this section shall be deemed amendatory,'' etc., may be disregarded in determining the question of conflict. As we have said, no language could have been used that would more clearly have expressed the intent that this amendment, if adopted, was to be taken as the last word in the charter on the subject of terms of office for the officers named therein, and as prevailing over everything else on that subject therein contained. There is nothing in the claim of counsel for plaintiff to the effect that such provision is void as being an attempted ''*amendment*'' of various unspecified provisions of the charter, some of which were not then in existence   The word ''amendatory'' as used herein simply means what we have above stated, viz.: that the provisions of amendment 9 shall be the controlling provisions on the subject specified. There was in its insertion no ''attempt to curtail the sovereign power,'' nor was ''its enforcement conditional upon certain independent happenings.'' It was inserted to make the meaning and intended effect of the proposed amendment clear and unmistakable to all concerned, including those who were to vote upon it. This it did in such a way that there could not have been any misunderstanding on the part of any person who read the proposed amendment. As

submitted, amendment 9 was a single straight proposition in regard to the terms of office of the officers therein named, expressed in such language that, when considered in connection with the other amendments proposed at the same election, it was subject to no other construction than that contended for by defendants.  The electors must be assumed to have so regarded it, and to have voted either for or against it upon that theory. As we have seen, of the 45,889 electors voting at the election, 28,108 voted for this amendment, a clear majority of more than 17,000.  None of these can be assumed to have voted for it, in view of its language, except upon the clear understanding that, if adopted, it would have the effect contended for it by defendants, and with the desire that it should have such effect.

There is no claim that any provision of our state constitution was not complied with in the matter of these amendments, other than that portion of section 8 of article XI, hereinbefore quoted, which we have italicized, viz.: "In submitting any such charter, or amendments thereto, any alternative article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others." It is claimed that this provision is mandatory, and that it was ignored in the submission of amendments 7 and 9, with the result that both amendments, in so far at least as they refer to terms of office, must be held to have never been legally adopted or made a part of the charter.

We cannot see any violation of the constitutional provision so relied upon in the method followed in regard to amendments 7 and 9.  The meaning of the provision is clear enough  It simply authorizes the presentation for the choice of the voters at a charter or charter amendment election, of an "alternative article or proposition," i. e., an article or proposition *expressly proposed to take the place of some other article or proposition that is also proposed,* and if such alternative is adopted it displaces the article or proposition for which it was offered as a substitute.  In so far as the provision refers to the presentation of an alternative article or proposition for actual submission, it cannot reasonably be read in any other way than as being simply permissive.  It simply *allows* an alternative article or proposition to be proposed, in the case of charter amendments either by the legislative body of the city or city and county, or

by the necessary number of qualified electors. There is no compulsion resting on anybody, so far as this is concerned, no legal duty to present an alternative article or proposition for submission. This seems so clear as not to need discussion. When such an alternative article or proposition is proposed in a legal way, it *must*, of course, be submitted for ratification by the people, and *must* be voted on separately, and there is nothing else that is mandatory about the provision, except that the right to present for submission an alternative article or proposition may not be denied the legislative body of the city or the requisite number of electors. The provision guarantees that right.

It is obvious that no "alternative article or proposition" within the meaning of this provision was here presented for submission. Neither amendment 7 nor amendment 9 was presented to be submitted as an alternative for any other article or proposition. Each was a single, distinct proposed amendment, dependent in no way upon any other proposed amendment in so far as the matter of adoption or nonadoption was concerned. The power of the electors to compel the submission by the board of supervisors of amendment 7 in the precise form in which it was proposed by them cannot be questioned, in view of the language of the constitutional provision. The power of the board of supervisors to submit amendment 9 in the form in which it was submitted, as a single distinct and independent proposed amendment, cannot be doubted. This would be true so far as mere power is concerned, even if there had been an irreconcilable conflict between the two in some respect, which, as we have seen, was not the situation. We are unable to see that the constitutional provision relied on by plaintiff has any application under the facts of this case.

It may be noted that the suggestion of plaintiff, that by the method of submission followed, the voter was denied the privilege of exactly expressing his will upon the question of two-year or four-year terms of office without regard to other questions submitted, is entirely without basis. It is obvious that one in favor of both the new method of election proposed by amendment 7 and the four-year term proposed by amendment 9, could effectually express his will accordingly by voting both for 7 and 9; that one in favor of the new method of election proposed, and in favor of a two-year term as opposed to a

four-year term could effectually express his will by voting for 7 and against 9; and that one in favor of the four-year term proposition and against the new method of election could effectually express his will by voting against 7 and for 9.

There is no other point made by plaintiff that requires notice here. We are entirely satisfied that amendment 9, being section 38a of article XVI of the San Francisco charter, was legally made a part of the charter, and that it constitutes the law of that city and county as to the terms of office of the officers therein named.

The alternative writ heretofore issued is discharged and the proceeding dismissed.

Shaw, J., Lorigan, J., Sloss, J., Henshaw, J., Melvin, J., and Beatty, C. J., concurred.