[L. A. No. 8320. In Bank.—December 22, 1924.]

CLARENCE W. HORN, Petitioner, v. ROBERT M. ALLEN et al., Constituting the Council of the City of Los Angeles, Respondents.

[1] MUNICIPAL CORPORATIONS—ADOPTION OF ORGANIC MUNICIPAL LAW—CONSTRUCTION OF SECTION 8, ARTICLE XI, CONSTITUTION.—One of the purposes of section 8 of article XI of the constitution was to enable a board of freeholders to submit separately to the electors of a city for their approval or rejection questions of municipal concern of a controversial nature and in such a way as to permit the free expression of the preferences of the voters as between opposing views on such questions; and it must also have been contemplated that such questions be so submitted as to permit the expression of that preference to be properly ascertained on

1. See 18 Cal. Jur. 945.

the part of the canvassng board in order that the prevailing proposition be correctly certified and declared. If the purpose be accomplished and the result properly declared it would follow that the proposition so submitted and certified would be adopted and become a part of the organic law of the city upon approval by the legislature.

[2] ID.—FREEHOLDERS' CHARTERS—SEPARATE PROPOSITIONS—SELF-EXE-CUTING PROVISION OF CONSTITUTION.—Section 8 of article XI of the constitution, providing for the submission of separate proposi-tions with the submission of a charter or amendment to the electors of a city for approval or rejection is self-executing, ex-cept as the method or manner of submitting such separate proposi-tions may be controlled by general laws governing the submission of propositions to a vote of the people, such as section 1197 of the Political Code.

[3] ID.—SUBMISSION OF CHARTER AND SEPARATE PROPOSITIONS.—Section 8 of article XI of the constitution discloses a clear distinction between the submission of a charter and the submission of separate propositions in connection therewith to the electors of a city. There may be a submission of a charter without the sub-mission of any separate proposition, the submission of the latter being optional with the board of freeholders, but it is only in connection with the submission of a charter that any separate propositions may be submitted.

[4] ID.—DEFEAT OF CHARTER—ACCEPTANCE OF SEPARATE PROPOSITION—EFFECT.—In a case where a proposed freeholders' charter is de-feated at the election and a separate proposition submitted in connection therewith is carried, legally the separate proposition cannot go into effect because there is no charter upon which it can operate.

[5] ID.—CONFLICTING SEPARATE PROPOSITIONS. — If a proposed free-holders' charter be submitted to the electors of a city with more than one separate proposition, either as alternatives or conflicting, or one included within the other, and more than one, as between those so related, receive a majority of the votes, the one re-ceiving the larger number of votes would control as to all matters in conflict, but it would not supersede the entire charter.

[6] ID.—CONSTRUCTION OF SECTION 8, ARTICLE XI, CONSTITUTION—CON-TROLLING PROPOSITION.—The "proposition" referred to in the clause of section 8, article XI, of the constitution, providing "the proposition receiving the larger number of votes shall control," is one of two or more separate propositions sub-mitted with the charter which, as between such' separate proposi-tions, is found to prevail.

4.  See 18 Cal. Jur. 774.

[7] ID. — CHARTER — RATIFICATION — SEPARATE PROPOSITIONS.—A proposed freeholders' charter for a municipality would be ratified if it received a majority of all the votes cast thereon regardless of the number of votes cast on any separate proposition.

[8] ID.—FREEHOLDERS' CHARTER — SEPARATE PROPOSITION — EFFECT OF VOTE.—Where a proposition for a freeholders' charter for a municipality, which contained a provision for a certain number of councilmen to be elected at large, was placed on the ballot as "Proposition No. 1," with a space opposite to vote "Yes" or "No," and a separate proposition, called an alternative, providing for a different number of councilmen to be elected, one for each district into which the city was to be divided, was on the ballot as "Proposition No. 2," with a space opposite to vote "Yes" or "No," the fact that the latter proposition was called an alternative proposition did not make it an alternative to the whole charter; and where both propositions received a majority of the votes cast, they both carried, although the majority for the charter was larger than the majority for the separate proposition.

---

(1) 28 Cyc., p. 244.   (2) 12 C. J., p. 734, sec. 123.   (3) 28 Cyc., p. 243.   (4) 28 Cyc., p. 243.   (5) 28 Cyc., p. 243.   (6) 28 Cyc., p. 243.   (7) 28 Cyc., p. 244.   (8) 28 Cyc., p. 244.

APPLICATION for Writ of Mandate to compel the City Council of Los Angeles to declare a certain proposition carried at an election for a proposed freeholders' charter. Writ granted.

The facts are stated in the opinion of the court.

Harry Lyons and Hewitt & Crump for Petitioner.

Jess E. Stephens, City Attorney, Lucius P. Green, Assistant City Attorney, and Clarence B. Penn, Deputy City Attorney, for Respondents.

SHENK J.—This is an application for a writ of mandate to compel the respondents as members of and constituting the council of the city of Los Angeles to certify the adoption of a certain separate proposition submitted to the electors of said city in connection with the submission and ratification of a new city charter. The respondents filed an answer as a return to the alternative writ issued herein, but by a

stipulation of facts subsequently filed all controversy as to the facts has been eliminated.

On the fifth day of June, 1923, a board of freeholders was elected for the purpose of framing a new charter for the city in accordance with the provisions of section 8 of article XI of the constitution. The draft of the new charter was duly prepared and submitted to the electors of the city at an election held on the sixth day of May, 1924. In the body of the charter, which comprises some 442 sections, sections 6 and 20 were incorporated, reading, respectively, as follows: "Section 6. The following officers of the city shall be elected by the electors of the City of Los Angeles, at large: Mayor, city attorney, the members of the council, the members of the board of education." "Section 20. The council shall consist of eleven members, elected as in this charter elsewhere provided."

In proposing the new charter the board of freeholders also proposed a separate proposition conflicting with sections 6 and 20 as incorporated in the body of the charter and which was denominated an alternative proposition. This proposition was submitted to the electors of the city with the charter. It immediately follows the closing section of the charter and was and is as follows:

## "Alternative Proposition.

"That Sec. 6 of the charter shall read as follows: Sec. 6. (1) The following officers of the city shall be elected by the electors of the city of Los Angeles, at large: Mayor, City Attorney, Controller. The members of the board of education. (2) The members of the council shall be elected by districts as follows: (a) The council in office at the time of the approval of this charter by the legislature, shall, not less than sixty (60) days before the primary nominating election to be held on the first Tuesday in May, 1925, divide the city into fifteen (15) districts. Districts so formed shall comprise as nearly as practicable equal numbers of voters, as determined by the total number of votes cast for governor in said districts at the last preceding state election at which a governor was elected, and be composed of contiguous and compact territory and bounded by natural boundaries or street lines. Any territory hereafter annexed to or consolidated with the city of Los Angeles shall, at the time of such annexation or

consolidation, be added to an adjacent district or districts by the council by ordinance. At the general election in June, 1925, one councilman shall be elected by each of the districts so constituted. On or before the first day of October, 1929, and each four years thereafter, the council shall by ordinance redistrict the city into fifteen districts in the same manner as prescribed in this section, and such districts shall be used for all elections of councilmen subsequent to such date until new districts are established, etc.

"That Sec. 20 of the charter shall read as follows: Sec. 20. The council shall consist of fifteen (15) members, elected as in this charter elsewhere provided."

Upon the ballots used at the election there was printed, in addition to the other matters required by law, the following:

| "Proposition No 1 | Shall the proposed Charter of the City of Los Angeles be adopted? | Yes |
| | | No |

| Proposition No. 2 | Shall the proposed alternative providing for a Council of fifteen members and for the division of the city into fifteen districts, and for the election of one member of the Council from each of said districts, be adopted?" | Yes |
| | | No |

At an appropriate time the council met as a canvassing board and canvassed the returns of the election. In performing its duties in that respect it found that the total number of votes cast at the election was 172,265. It also found that the charter received 126,058 votes in favor thereof and 19,287 unfavorable votes, and declared the charter duly adopted. As to the separate proposition the respondents found that the same had received 88,275 votes in favor thereof and 53,441 unfavorable votes, and declared that the said separate proposition had failed of adoption. The reason assigned for so declaring is found in a resolution of the council declaring the result of the election as follows: "and that said proposition, while receiving a majority of the votes cast thereon, failed of adoption for the reason that the charter which provides for the election of eleven (11) councilmen at large as an alternative received a larger majority of the votes cast at said election on said proposition."

Counsel agree that the new charter was prepared, proposed, and submitted to the electors of the city in all re-

spects as required by law and was duly ratified. Counsel also agree that it was competent for the board of freeholders to submit proposition No. 2 as a single, separate proposition, and that the form in which the same appeared on the ballot was in accordance with the law applicable thereto. Counsel, however, cannot agree as to the legal effect of the vote cast on proposition No. 2. The sole question for our determination is: Did the respondents properly declare and determine the result of the vote on proposition No 2? The solution of this question depends upon the legal effect to be given the vote, having in mind the method employed by the board of freeholders and the city authorities in submitting the charter and the separate proposition in connection therewith, and the provision of section 8 of article XI of the constitution. The portion of that section bearing on the question is as follows: "In submitting any such charter or amendment separate propositions, whether alternative or conflicting, or one included within the other, may be submitted at the same time to be voted on by the electors separately, and, as between those so related, if more than one receive a majority of the votes, the proposition receiving the larger number of votes shall control as to all matters in conflict."

[1] Undoubtedly one of the purposes of this constitutional provision was to enable the board of freeholders to submit separately to the electors of the city for their approval or rejection questions of municipal concern of a controversial nature and in such a way as to permit the free expression of the preferences of the voters as between opposing views on such questions. It must also have been contemplated that such questions be so submitted as to permit the expression of that preference to be properly ascertained on the part of the canvassing board in order that the prevailing proposition be correctly certified and declared. If the purpose be accomplished and the result be properly declared it would follow that the proposition so submitted and certified would be adopted and would become a part of the organic law of the city upon approval by the legislature.

[2] Although this provision of the constitution has been in effect since November, 1914, the legislature has made no particular statutory provision prescribing the method or manner of submitting separate propositions in connection with the proposed charter. The language quoted must,

therefore, be considered as self-executing, except as the method or manner of submitting such separate propositions may be controlled by general laws governing the submission of propositions to a vote of the people, such as section 1197 of the Political Code, the requirements of which, it is conceded by the parties hereto, have been complied with.

It is the contention of the respondents that as the charter received a larger number of votes than the separate proposition, therefore the charter in its entirety was ratified and the separate proposition defeated. Counsel for respondents arrive at this conclusion by reason of their construction of the language of the constitution above quoted that if more than one proposition received a majority of the votes, the proposition receiving the larger number of votes shall control as to all matters in conflict. It is the contention of the petitioner that the proposed charter cannot be regarded as a separate proposition within the meaning of the constitutional provision and that it is only when the charter and the separate proposition are both considered as separate propositions that the result declared by the respondents and contended for by their counsel may be upheld.

[3] An examination of the constitutional language in question discloses a clear distinction between the submission of a charter and the submission of separate propositions in connection therewith. The submission of a charter is one thing and the submission of separate propositions is quite another. There may be a submission of a charter without the submission of any separate proposition. The submission of separate propositions by the board of freeholders is optional. (See *Apple* v. *Zemansky,* 166 Cal. 83 [134 Pac. 1149].) There may not, however, be the submission of any separate proposition without the submission of the charter. It is only in connection with the submission of the charter that any separate proposition may be submitted. If the charter be ratified and a separate proposition or propositions be defeated, the charter would go into effect upon its approval by the legislature and the submission of the separate proposition would have no effect upon it. [4] If a case be assumed where the charter be defeated and a separate proposition submitted in connection therewith receive a majority of all the votes cast thereon, then the separate proposition nominally would carry, but legally it could not go into

effect because there would be no charter upon which it could operate. [5] Again, if a charter be submitted and more than one separate proposition be also submitted, either as alternatives or conflicting or one included within the other, and more than one, as between those so related, receive a majority of the votes, the one receiving the larger number of votes would control as to all matters in conflict. The control which it would exercise would be effective as to matters in conflict or related subjects. This would certainly be true of its effectiveness as against any other separate proposition so related and submitted with it and to give it · the force contemplated by the constitution would cause it to supersede any conflicting provision in the charter itself. But it would not supersede the entire charter. The contention of the respondents is based on the assumption that propositions Nos. 1 and 2 are alternative propositions as contemplated by the constitution, for it is only in the consideration of them in that sense that the clause "the proposition receiving the larger number of votes shall control" has any application. [6] But the "proposition" referred to in that clause is one of two or more separate propositions submitted with the charter which as between such separate propositions, is found to prevail. If respondents' contention be correct it would seem also to be true that if proposition No. 2 received a larger number of votes than the charter, the latter would be defeated, notwithstanding the latter might receive a majority of all the votes cast thereon. [7] But this would not be true for the reason that the charter would be ratified if it received a majority of all the votes cast thereon regardless of the number of votes cast on any separate proposition. [8] The confusion resulting from the assumption of counsel for respondents arises by reason of the fact that with that assumption propositions Nos. 1 and 2 are deemed strictly alternative propositions. Of course, the fact that the board of freeholders called proposition No. 2 an alternative does not make it alternative to the whole charter, nor set apart the entire charter as an alternative to it. True, in one sense proposition No. 2 may be· considered as an alternative to certain sections in the body of the charter, but from the manner of its submission and from the form of the ballot it cannot be considered as a proposition alternative to the entire charter. It may be that strictly

alternative, or conflicting, or one included within the other propositions could be submitted in such a way that the voter would have the opportunity to vote ''yes'' on the one and ''no'' on the other and thus express his preference. In that event there would be no difficulty in determining the result of the vote as between those so related and conflicting. The one receiving the larger number of votes as between those having a majority would prevail, become the law and control as against a conflicting provision on the same subject in the charter itself. The same result would follow as to the controlling effect of such proposition whether it be a proposition singly submitted or a single proposition found to prevail by reason of the elimination of other conflicting separate propositions receiving a less number of votes. This is specially true as to the proposition submitted in this case for the reason that it received a majority of all the votes cast at the election.

If the method of submission of the single separate proposition as employed by the board of freeholders was in accordance with constitutional requirements, and if the form of the ballot presented to the voters was such as to permit a free expression on their part of a preference for the at-large plan of councilmanic representation on the one hand or for the district plan on the other, and the intention of the voters be readily ascertained and determined, we feel impelled to give full effect to the very large majority vote in favor of the district plan of representation. As to the question of whether or not proposition No. 2 was constitutionally submitted, counsel agree that it was so submitted. While the agreement of counsel as to a question of law is not binding on this court, we cannot say that we are not in accord with their conclusion. As to whether or not the electors were given free opportunity to express their preferences on the subject of councilmanic representation and in such a way as to render their intention clearly ascertainable, we will approach the matter from the standpoint of the voter. The charter and separate proposition as submitted were prepared, printed, and circulated as required by the constitution. We must, therefore, assume that the voter was fully informed as to the matter concerning which he desired to express his preference. When he proceeded to mark his ballot he was confronted with two propositions,

upon both of which it was not only his right but also his duty to vote in order that his intention might be clearly expressed. For if he should vote upon one and not upon the other the result which he desired might not be accomplished. If he were in favor of the charter and the at-large plan of councilmanic representation he would vote "yes" on proposition No. 1 and "no" on proposition No. 2. If he were in favor of the charter and in favor of the district plan he would vote "yes" on both propositions. If he were not in favor of either the charter as a whole or of the district plan he would vote "no" on both propositions. It would be unreasonable to assume that a voter would vote "no" on proposition No. 1 and "yes" on proposition No. 2, for he would be charged with knowledge that if the charter failed of ratification, proposition No. 2 could not become effective, even though the latter received a majority of the votes cast thereon. In that case there would be no sections 6 and 20 which proposition No. 2 could displace for the very obvious reason that there would be no charter at all as proposed.

The agreed statement of facts on file herein, among other things, states that it is stipulated: "That petitioner herein voted in the affirmative upon said new charter, which appeared as proposition No. 1 upon said ballot, and in the affirmative upon proposition No. 2; that is to say, petitioner voted in the affirmative upon the charter as a whole and also in the affirmative upon the alternative proposition; that petitioner in so voting upon the charter as a whole intended to vote for the charter as proposed saving and excepting the proposition relating to the number of councilmen and the manner of their election, and intended that alternative proposition No. 2 should displace to that extent the provisions of the new charter proposed as a whole; that petitioner knew and understood that said alternative proposition was to be voted upon in connection with the new charter, and that it would only be effective in the event the new charter was adopted."

The intention of petitioner, as indicated by his vote in the manner above stated, was readily and freely expressed and ascertainable under the method by which the propositions were presented to him. He was in favor of the charter except as to the at-large plan of councilmanic representation He, therefore, voted for both propositions, intending, first,

that the charter should be adopted, and, second, that proposition No. 2, or the district plan, should displace the provisions of the proposed charter relating to the at-large plan. It was quite reasonable that he should so vote and that he should express his intention in the manner indicated. We may assume that 88,275 voters were like minded and so expressed their intention, for that number of votes were cast in favor of proposition No. 2 and more than that number were cast in favor of the charter. In other words, more than a majority of all the votes cast at the election as well as on the question of the proposed charter were cast in favor of the district plan. The undoubted purpose of submitting the separate proposition here involved was that the voter might not be compelled to vote against the charter if he objected to the at-large plan of councilmanic representation, but might vote for the charter and also in favor of the district plan with the understanding that if the district plan received the requisite number of votes to make it effective, it should take the place of the at-large plan as included in the charter. We conclude that the method of submission adopted by the board of freeholders and the form of the ballot as prescribed by the city authorities in calling and holding the election accomplished that purpose. The electors were afforded thereby a free opportunity to express their intentions and preferences and proposition No. 2 was adopted. This conclusion seems compelled especially in view of the fact that more than a majority of the votes cast not only on the proposed charter but also at the election were cast in favor of the district plan. It is easily conceivable that if the separate proposition had not been submitted and the 88,275 electors who voted for that proposition had been compelled to vote for or against the proposed charter with the certainty that if they voted "yes" thereon the at-large plan would have been put into effect, a sufficient number of those who actually voted for the district plan would have voted against the charter and thus have defeated the same.

As above stated, the argument of respondents is based solely on the proposition that the charter received more votes than the separate proposition, and, therefore, the charter was adopted and the separate proposition defeated. The difficulty with their position is that they proceed on the erroneous assumption that the votes of the 88,275 electors

who voted for proposition No. 2 and who may be assumed also to have voted for the charter should be counted as votes favorable to the at-large plan notwithstanding their vote on the district plan. According to the election returns, it required a vote of 72,673 to ratify the charter. If the 88,275 electors who were in favor of the district plan had voted against the charter, as they might have done if they had thought that their votes would have been considered also in favor of the at-large plan, the charter would have been defeated, a result the board of freeholders may have contemplated might occur if the district plan were not submitted separately.

By reason of the conclusion of the respondents as to the effect of the vote on proposition No. 2 the city authorities will, unless a peremptory writ issue herein, cause the new charter, including the at-large plan of councilmanic representation, to be submitted to the legislature for approval. As we have concluded that proposition No. 2 was adopted, the same should be certified as adopted and be incorporated in the new charter as sections 6 and 20 thereof before the submission of the new charter to the legislature for approval.

Let a peremptory writ issue as prayed.

Myers, C. J., Lawlor, J., Lennon, J., Waste, J., Richards, J., and Seawell, J., concurred.