[No. C031927. Third Dist. Dec. 22, 2000.]

SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION,
Plaintiff and Appellant, v.
COUNTY OF SACRAMENTO, Defendant and Respondent.

**COUNSEL**

Mastagni, Holstedt & Chiurazzi, Richard J. Chiurazzi and Charles H. Briggs III for Plaintiff and Appellant.

Robert A. Ryan, Jr., County Counsel, and Michele Bach, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**SCOTLAND, P. J.**—At the primary election on June 2, 1998, the voters of Sacramento County approved Measure D and Measure E, both of which dealt with the arbitration of employment disputes between the County of Sacramento and nonsupervisory law enforcement representatives. Measure D passed by 58 percent of the vote, while Measure E passed by 53 percent of the vote.

The difference between the initiatives is that Measure D provides that a decision of the arbitration board is final without need for approval by the board of supervisors or the electorate, whereas Measure E provides that the results of arbitration concerning certain contract provisions are binding only if approved by a majority of the votes cast in a countywide election in which the question of approval or disapproval is presented to the voters.

The Sacramento County Deputy Sheriffs' Association (the Association), brought a declaratory relief action against the County of Sacramento (the County), contending that Measure E is ineffective because Measure D, approved by the voters at the same election, conflicts with Measure E and received a greater majority of the votes cast. The trial court granted judgment on the pleadings, concluding that Measure E does not suffer from a fatal conflict with Measure D. The Association appeals.

We conclude there is no irreconcilable conflict between the two measures. By its terms, Measure E was to be given effect only if the voters also approved Measure D. Thus, as we shall explain, Measure E was intended as

a limited amendment of the procedures established by Measure D. Because the intent of the electorate is readily ascertainable under the method by which the measures were presented, the trial court correctly gave effect to both measures, with Measure E controlling over Measure D with respect to the limited issue addressed by Measure E. Accordingly, we shall affirm the judgment.

BACKGROUND

Measure D added article XIX, consisting of sections 91 through 94, to the Sacramento County Charter. The article is intended to provide for impartial and binding arbitration of employment disputes between the County and the representative of nonsupervisory law enforcement personnel, referred to as the "(003) Non-Supervisory Law Enforcement Unit." To this end, section 94 requires binding arbitration of "[a]ll disputes or controversies pertaining to wages, hours or terms and conditions of employment which remain unresolved after good faith negotiations between the County and the organization recognized as representing the (003) Non-Supervisory Law Enforcement Unit employees. . . ." The measure establishes certain procedures for arbitration, and subdivision (e) of section 94 provides that, when a final award is determined, "[n]o other actions by the County Board of Supervisors or by the electorate to confirm or approve the decision of the Arbitration Board shall be required or permitted."

Measure E added section 95 to article XIX of the Sacramento County Charter. Subdivision (a) of section 95 states: "Notwithstanding any other provision of the Charter, in the event a ballot measure is approved at the June 2, 1998, primary election to amend this Charter to require any labor contract to be submitted to binding arbitration, the results of such arbitration as to certain contract provisions shall be binding only to the extent that those provisions, as designated herein, are approved by the majority of the voters voting in a county-wide election in which the question of approval or disapproval is placed in accordance with the requirements of this section." Subdivision (b) of section 95 reserves for voter approval any portion of an award that the sheriff determines "would substantially interfere with management's prerogative to deploy or assign personnel" and any portion of an award that the board of supervisors determines "would, absent diversion of funds deemed necessary by the Board for other County programs or services, require a tax increase to fund." If neither the sheriff nor the board of supervisors makes requisite findings within 10 days of receiving notice of the arbitration panel's decision, voter approval is not required. Subdivision (h) of section 95 provides: "This section shall apply only to those labor

contracts subject to any Charter amendment approved at the June 2, 1998, primary election requiring such contracts to be submitted to binding arbitration."

Measures D and E were the only county measures submitted to the voters at the Primary Election on June 2, 1998. Measure D asked for a yes or no vote on the question: "Shall Article XIX be added to the Charter of the County of Sacramento to create a system of binding arbitration for resolution of labor disputes between the County and the Sheriff Law Enforcement Non-Supervisory bargaining unit?" (Sacramento County Ballot Pamp., Primary Elec. (June 2, 1998) Measure D, p. 001-22.) Immediately thereafter, Measure E asked for a yes or no vote on: " 'CHARTER AMENDMENT RELATING TO VOTER APPROVAL OF CERTAIN ARBITRATED LABOR CONTRACTS. In the event the Sacramento County Charter is amended to require binding arbitration of any labor agreement, shall the Charter also be amended to require voter approval of those provisions of such arbitrated contracts which affect management rights or require tax increases before those provisions shall become effective?' " (Sacramento County Ballot Pamp., *supra*, Measure E, p. 001-29.)

Measure D was approved by a vote of 131,774 to 94,106, i.e., by 58.34 percent of the votes cast. Measure E was approved by a vote of 117,642 to 101,223, i.e., 53.75 percent of the votes cast.

The Association commenced an action for declaratory relief, contending that Measure E conflicts with Measure D and that, because Measure D received a higher affirmative vote, it alone is effective. The trial court granted judgment on the pleadings, reasoning that Measure E is an amendment of Measure D and became effective when both were adopted.

## DISCUSSION

Measure D is a far more comprehensive measure than is Measure E. Measure D establishes a requirement that the County and the bargaining representative of nonsupervisory personnel bargain in good faith, provides for binding arbitration in the event of an impasse, and establishes procedures for arbitration. During arbitration, each party is required to submit a last offer of settlement with respect to each disputed issue. The arbitration board determines each issue separately by selecting one of the competing last offers of settlement. When the arbitration board reaches a decision, the parties are given 10 days to attempt to resolve their differences, after which the decision becomes binding unless the parties agree to extend the time. As we have noted, Measure D provides that no action of the board of supervisors or the electorate shall be required or permitted in order for the arbitration board's decision to be binding.

Measure E was written as a companion to Measure D. As noted above, its effect was to reserve for voter approval a limited class of issues that might be determined in arbitration. In all other respects, contract provisions approved by arbitration become effective as provided for in Measure D. Measure E was written so that it could be given effect only if Measure D was also approved by the voters.

There is no question that the voters of the County had the authority to adopt Measure E. Had Measure E been adopted by a simple majority at an election subsequent to June 2, 1998, there would be no arguable impediment to its effectiveness. The question is whether Measure E may be given effect since it was adopted at the same election as Measure D, but by a smaller affirmative vote.

The controlling constitutional authority is article XI, section 3, of California's Constitution. Subdivision (b) of that section permits a county charter to be amended or repealed by the voters pursuant to a proposal by initiative or by the county governing body. Subdivision (d) of the section states: "If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail." This latter provision is identical to article II, section 10, subdivision (b) of the Constitution, which governs state statutory law adopted by initiative or referendum. In this respect, decisional authorities concerned with one or the other provision are interchangeable.

In *Apple v. Zemansky* (1913) 166 Cal. 83 [134 P. 1149] (*Apple*), our state Supreme Court was required to determine whether there was an irreconcilable conflict between two measures adopted by San Francisco voters. One measure, Amendment No. 7, changed the method of nominating and electing candidates for local offices and, in doing so, readopted the existing two-year terms of various local offices. Another measure, Amendment No. 9, changed the terms of office of various officers to four years. While both measures were adopted, Amendment No. 7 received the higher affirmative vote. The plaintiff, who wished to run for the office of coroner, asserted that Amendment No. 9 conflicted with Amendment No. 7 and could be given no effect. (166 Cal. at pp. 85-88.)

In resolving the dispute, *Apple* noted that Amendment No. 9 contained a provision stating it was amendatory of all other provisions of the charter relating to terms of office, whether preexisting or contained in sections concurrently amended in other respects. (*Apple, supra,* 166 Cal. at pp. 87, 90-91.) *Apple* found no reason to disregard that provision in determining whether a conflict existed, and found the language could not have more

clearly expressed that Amendment No. 9 was to be the controlling provision in the charter on the subject of terms of office. (166 Cal. at p. 91.) In light of the circumstances and the language used in Amendment No. 9, there was no possibility of any misunderstanding on the part of the voters. (166 Cal. at pp. 91-92.) Accordingly, *Apple* found it unnecessary to determine the effect of an irreconcilable conflict between two charter amendments because there was no such conflict. (*Id.* at p. 90.)

A similar issue arose in *Horn v. Allen* (1924) 195 Cal. 121 [231 P. 1001] (*Horn*).[1] There, voters of the City of Los Angeles were presented with a proposal to adopt a charter. The proposed charter called for election of 11 council members at large. As an alternative proposition, the voters were presented with a proposal to divide the city into 15 districts, with council members elected from their districts. Both proposals were adopted, with adoption of the charter receiving the higher affirmative vote. The city council then refused to give effect to the alternative proposition, reasoning that the adoption of the charter by the higher affirmative vote rendered the alternative proposition ineffective. (*Id.* at pp. 123-125.)

In resolving the issue, *Horn* said that "if the form of the ballot presented to the voters was such as to permit a free expression on their part of a preference for the at-large plan of councilmanic [*sic*] representation on the one hand or for the district plan on the other, and the intention of the voters be readily ascertained and determined, we feel impelled to give full effect to the very large majority vote in favor of the district plan of representation." (*Horn, supra,* 195 Cal. at p. 129.) As to that question, *Horn* "approach[ed] the matter from the standpoint of the voter" (*ibid.*) and found that the intention of the voters was readily and freely expressed and ascertainable. (*Id.* at p. 130.) Voters who wished to adopt the charter and retain at-large elections could vote yes on the first proposition and no on the second. Voters who wished to adopt the charter but desired to incorporate district elections could vote yes on both propositions. Thus, *Horn* found no fatal conflict and gave effect to the charter, as amended by the second proposition. (*Id.* at p. 132.)

In *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com.* (1990) 51 Cal.3d 744 [274 Cal.Rptr. 787, 799 P.2d 1220] (*Taxpayers*), the state electorate had, at the same election, approved Propositions 68 and 73, each intended to provide comprehensive regulation of political campaign contributions and spending. (51 Cal.3d at pp. 764-765.) There was nothing in

---

[1] By the time the dispute in *Horn* arose, a provision had been added to the Constitution to provide that, in the event of conflict, the proposition receiving the higher number of affirmative votes would control as to all matters in conflict. (*Horn, supra,* 195 Cal. at p. 126.)

the measures to indicate the intent of the electorate in the event both measures should pass. (*Id.* at p. 769.) *Taxpayers* concluded that, "unless a contrary intent is apparent in competing, conflicting initiative measures which address and seek to comprehensively regulate the same subject, only the provisions of the measure receiving the highest affirmative vote become operative upon adoption." (*Id.* at p. 770.)

In *Yoshisato v. Superior Court* (1992) 2 Cal.4th 978 [9 Cal.Rptr.2d 102, 831 P.2d 327] (*Yoshisato*), the Supreme Court explained that its decision in *Taxpayers* was based upon the competing nature of the initiative regulatory schemes involved and the analytical difficulty and practical impossibility of implementing a presumed, but in fact unknown, intent of the electorate. (*Yoshisato, supra,* at p. 988.) *Yoshisato* held that no such problem arises when multiple measures are presented to the voters as complementary or supplementary measures. (*Ibid.*) In view of the solemn judicial duty of upholding the rights of the electorate, propositions approved at the same election should not be declared as competing and ineffective pursuant to the "bright line" rule of *Taxpayers* if they reasonably may be construed otherwise. (*Yoshisato, supra,* at pp. 988-989.)

Neither *Taxpayers* nor *Yoshisato* questioned the approach of *Horn* and *Apple* to the determination of whether there is an irreconcilable conflict between measures adopted by the electorate. ■ The decision in *Taxpayers* stands for the proposition that, when the ballot measures contain no sound basis for determining the intent of the electorate, a court may not rely upon a presumed or assumed intent to create an amalgam of the measures that may have been intended by no one. (*Taxpayers, supra,* 51 Cal.3d at pp. 769-770.) The rule of *Taxpayers* is limited to situations which present the analytical difficulty and practical impossibility of implementing a presumed but in fact unknown will of the electorate. (*Yoshisato, supra,* 2 Cal.4th at p. 988.)

In determining whether the will of the electorate is unknown and unknowable, we may not disregard declarations of intent in the measures themselves. (*Apple, supra,* 166 Cal. at p. 91.) And we must view the matter from the standpoint of the voter. (*Horn, supra,* 195 Cal. at p. 129.) If the intent of the electorate "was readily and freely expressed and ascertainable under the method by which the propositions were presented," we must give full effect to the intent of the electorate as thus expressed. (*Id.* at pp. 129-130.)

■ In this case, the intent of the electorate was readily and freely expressed and easily ascertainable from the terms of the measures and the method by which they were presented to the voters. Measure D established a

broad right to arbitration of all disputes or controversies pertaining to wages, hours, or terms and conditions of employment. Measure E reserved for voter approval two limited types of contract provisions that might be determined in arbitration. By its express terms, Measure E applied notwithstanding any other provision of the charter and only if Measure D also was approved. And by its terms, Measure E applied only to those contracts that are otherwise subject to Measure D.

The language used in Measure E could not have been more clear. It was intended as a limited amendment of the procedures established in Measure D and was intended, by its unequivocal language, to control over Measure D with respect to the limited issues it governs. Measure E had no other arguable purpose. A voter who wished to adopt binding arbitration without reservation could vote yes on Measure D and no on Measure E. A voter who wished to adopt binding arbitration with the reservations expressed in Measure E could vote yes on both measures.[2]

There is no need here to rely upon assumptions or presumptions of intent. By adopting Measure E, the electorate of the County can have meant and intended only one thing—to withhold limited types of contract provisions from the full reach of Measure D. Here, as in *Apple* and *Horn*, there is no irreconcilable conflict between the ballot measures.

Accordingly, the trial court properly entered judgment on the pleadings in favor of the County.

DISPOSITION

The judgment is affirmed.

Blease, J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2001.

---

[2]Here, as in *Horn*, it is likely that some of the voters who voted yes on Measure D did so because of the limitation on Measure D that they approved by also voting yes on Measure E. It is likely that the available option presented in Measure E contributed at least to some extent to the affirmative vote on Measure D. In any event, what is entirely implausible is a conclusion that a majority of the County voters intended to adopt Measure D without the limitations which were approved by Measure E. Neither law nor logic would require us to engage in such an assumption. (*Horn, supra*, 195 Cal. at pp. 131-132.)