MAHER v. CITY OF JACKSON.

1. MUNICIPAL CORPORATIONS—CITIES—CHARTER—ELECTION.

The home rule act, 1 Comp. Laws 1915, § 3304 *et seq.*, makes no provision, either mandatory or permissive, for submitting together alternative charters or parts thereof for the electors to choose between or reject, and provides no rule or machinery to conduct or canvass such election, as provided in certain jurisdictions where a constitution or statute expressly authorizes submission of alternative propositions. It contemplates the submission of one distinct and complete proposed charter to be accepted or rejected by the electors and the submission at the same time of additional independent proposals not covered by the charter as proposed, but which, if adopted by a three-fifths vote, become part of the charter.

2. SAME—AMENDMENT—ELECTIONS—ALTERNATIVE PROPOSALS.

Under these provisions of the statute the charter commission were not authorized to append a so-called amendment to the proposed charter, containing an alternative provision or clause relating to special assessments for paving to be voted on at the same time as the adoption of the charter and if adopted by a sufficient vote to become part of the instrument in place of a similar section therein included.

3.. SAME—MAJORITY VOTE—STATUTE.

And although the proposed amendment carried by a majority vote, when the vote on the charter was four to one in favor thereof, the court could not recognize the will of the electors expressed in a manner not legally authorized.

4. SAME.

And where it was not apparent that any appreciable number of the electors was misled by the submission of the amendment, and the charter went into effect in due course and was treated as carried, the court could not attack or review the certificate of the canvassing board by declaring that any part had not duly been adopted as certified.

Appeal from Jackson; Parkinson, J. Submitted April 10, 1916. (Docket No. 58.) Decided April 24, 1916.

Bill by Elsie Maher and others against the city of Jackson and others for an injunction restraining defendants from collecting certain taxes. From a decree for defendants, complainants appeal. Affirmed.

*John F. Henigan* and *Reece & Blackman,* for complainants.

*Lyman B. Trumbull* and *Wilson & Cobb,* for defendants.

STEERE, J. This suit involves the validity of a special paving tax levied against plaintiffs' property in the city of Jackson, which adopted a commission charter in 1914, under provisions of the so-called "Home Rule Law" (Act No. 279, Pub. Acts 1909), as amended by Act No. 5, Pub. Acts 1913 (1 Comp. Laws 1915, § 3304 *et seq.*).

It is not necessary for the purposes of this contention to review in detail all the various steps taken under the act leading up to the adoption of said charter, which was prepared by a commission elected for that purpose in the spring of 1914, and adopted by a ma-

jority vote of the electors at a general election held
November 3, 1914. The only portion questioned is
serial section 250 of said charter which, under the
heading "Pavements," is as follows:

"Except the cost of intersections and of paving in
front of exempt property, the entire cost of the origi-
nal pavements shall be met by special assessments upon
premises included in a special district to be constituted
of the lands fronting upon that part of the street or
alley so paved or to be paved."

Prior to January 1, 1915, the city was under the
aldermanic system of government, its charter having
been granted by the State legislature, which was en-
tirely superseded by the present charter, adopted by
its electorate, providing for a commission form of gov-
ernment. The old charter provided that two-fifths of
the expense of such portions in front of private prop-
erty abutting upon the street to be paved should be
paid by the abutting property owners and the remain-
ing three-fifths out of the general funds of the city.
Presumably as the result of some diversity of opinion
amongst themselves, or divided public sentiment over
whether the entire expense of paving in front of pri-
vate property should be borne by the landowners or
allotted between the city and abutting owners, the
charter commission prepared and submitted to the
electors at the same time the proposed charter was
voted upon a so-called "amendment" to serial section
250 of the proposed new charter, which amendment,
more closely in harmony with the old charter, provided
that, except the cost of intersections, etc. (to be borne
entirely by the city), abutting owners should pay three-
fifths and the city two-fifths. The commission handled
this subject in the proposed charter itself, under the
heading "Miscellaneous," in part as follows:

"(303) Sec. 4. There shall also be submitted to the
electors, for their approval or rejection, at the same

time and upon the same ballot that this proposed char-- ter is submitted, an amendment to section 4 of the subject 'Pavements,' being general paragraph number 250 of said proposed charter, as follows: 'Except the cost of intersections and of paving in front of exempt property, which is to be borne entirely by the city, the cost of original pavements shall be met, three-fifths thereof by special assessments upon premises included in a special district to be constituted of the lands fronting upon that part of the street or alley so paved or to be paved, and two-fifths of the cost thereof shall be borne by the city.'

"(304) Sec. 5. Said proposed amendment shall appear on the ballot below the submission of the charter and the form of submission shall be as follows:  Instructions—A cross (x) in the square ([ ]) before the word 'Yes,' is in favor of the amendment, and before the word 'No,' is against the amendment.

"Shall section 4 of the subject 'Pavements' of the proposed charter, which reads as follows: [quoting]— being general paragraph number 250, be amended so as to read as follows: [Quoting.]

[ ] Yes.

[ ] No.

"(305) Sec. 6. If this proposed charter be adopted by the electors, and said amendment be also adopted, then said amendment shall become a part of the charter and shall be inserted in the place of section 4 under the subject 'Pavements,' general paragraph number 250, as now found in this proposed charter."

The questions of adoption of the charter as a whole and the so-called "amendment" were accordingly submitted upon one ballot, but to be voted upon separately. A statement, with explanation of the essential features of the proposed charter, was issued by the commission in pamphlet form, containing the whole charter and "amendment." This was generally distributed throughout the city, and published in full in both daily papers. The purpose of the amendment and manner of voting upon it were also explained. The voters were instructed that those desiring to vote for the charter as it was

submitted should vote "Yes" for the charter and "No" for the amendment, and those desiring to vote both for the charter and amendment should vote "Yes" for the charter and "Yes" for the amendment, and if the amendment was adopted, it would supersede the provision in section 250 of the proposed charter as to special assessments for paving. The canvass of this election, made by the then common council of the city acting as the legally constituted canvassing board, showed that on the proposition of adopting or rejecting the proposed new charter there were 5,166 votes cast, of which 4,170 were in the affirmative and 996 in the negative, showing a majority in its favor of 3,174, while on the question of adopting the so-called "amendment" there were cast a total of 4,465 votes, of which 2,434 were in the affirmative and 2,031 in the negative, showing a majority in its favor of 403. As a result of this canvass the common council officially declared and certified the charter adopted in its entirety, but the amendment lost because it had not received a three-fifths vote of the electors voting thereon, as required by section 23 of the home rule act (1 Comp. Laws 1915, § 3326). A mayor and four commissioners were elected under the new charter, who took office January 1, 1915, and proceeded to administer the affairs of the city. In April, 1915, steps were taken to pave Seymour street in said city at an estimated cost of $8,144.60, of which $5,862.20 was to be paid by the abutting property owners and the balance by the city, according to the provisions of serial section 250 of the new charter. In July, 1915, when the city commissioners and assessor sat as a board of review upon a special assessment roll prepared by the city assessor, plaintiffs appeared by counsel and filed their protest against the proceedings, and especially the method by which the assessments were made, but the assessments were subsequently affirmed by resolution of the commission, and

on July 31, 1915, a contract was entered into by the city with the defendant Globe Construction Company to do said paving. On August 27, 1915, this bill of complaint was filed, and an order was made by the circuit judge to show cause why a preliminary injunction should not issue as prayed for, but, after a hearing upon the order to show cause, held September 10, 1915, the injunctive relief asked was denied.    Plaintiffs' counsel interrogatively summarize the issues they propose as follows:

"(1) What was the so-called 'amendment,' an independent section or proposition, or an alternative section or proposition?

"(2) Did the charter commission have the power under the provisions of Act No. 5 of the Public Acts of 1913, as amended, to submit an alternative proposition or section to the voters?

"(3) If legally submitted, was it adopted?"

It is patent that no question of amending an existing charter is involved here, and provisions of the home rule act upon that subject are not applicable.    The commission elected for that purpose worked out in all its details a new and complete charter revision for the city, framed upon a plan of government and administration radically differing from the old, which it was designed to be a substitute for, and take the place of, as an entirety.    Having prepared and agreed upon a proposed new charter the commission had the power, and it was its duty, to submit it as a whole to the electors, according to prescribed procedure, for adoption or rejection.    The act provides for the submission of but one charter for adoption or rejection, not two or more for the electors to compare and pass upon, or select from.    The commission may, however, in its discretion, submit additional matters to the electors under amended section 23 (Act No. 5, Pub. Acts 1913 [1 Comp. Laws 1915, § 3326]), which provides, so far as material here:

"There may be submitted with any charter or an amendment to a charter independent sections or propositions, and such of them as receive a three-fifths vote of the electors voting thereon shall become a part of such charter, or shall prevail as such amendments."

Under this provision the commission apparently conceived itself empowered to submit to the electors a proposed "amendment" to a proposed charter, and in the proposed charter, not yet adopted, to prescribe the manner of submitting and voting upon the proposed amendment. It was not in fact or name an "independent section or proposition." In force and effect it was a proposed alternative to serial section 250 of the proposed charter, submitted to the electors to choose between the two. Whichever was adopted, the other was necessarily rejected. Our home rule act has made no provision, either mandatory or permissive, for submitting together alternative charters or parts of charters for the electors to choose between, or reject, and provides no rule or machinery to guide and control the conduct and canvass of such an election, as provided in certain jurisdictions where a constitution or statute expressly authorizes submission of alternative propositions. If under this act alternative propositions or sections or amendments could be submitted as to one section of a proposed charter, it could be done as to all, and amendments might be submitted to proposed amendments, until the electors would be confronted by a confusing variety of proposed charters and conflicting propositions, with no rule or restraint as to the manner of submission or canvassing the result. The act only contemplates the submission of one distinct and complete proposed charter, to be accepted or rejected by the electors, and permits submission at the same time of additional independent sections or propositions, not covered by the charter as proposed, but which, if adopted by a three-fifths vote, while the pro-

posed charter only requires a majority, would be added to and become a part of the charter, which otherwise would remain unchanged.

It is evident, and necessarily conceded, that plaintiffs could have no standing in court if the so-called "amendment" was authorized by and submitted under section 23 of the act, for it failed to carry by a three-fifths vote; but it is pointed out that the charter commission did, in fact, submit to the electors an "alternative article or proposition" in the form of a substitute paving section for serial section 250 of the proposed charter, which received a clear majority of those voting upon it, and it is urged that, despite the "bungling manner" in which it was submitted, a majority of the voters, having voted for the adoption of the alternative proposition, should not be disenfranchised and their will, as registered by their votes, held for naught, by resort to section 23 of the act, which requires a greater majority than a direct vote for the charter as a whole, and which is not applicable to such an alternative proposition or section, but that under the general powers conferred by the Constitution and laws enacted pursuant thereto, authorizing the electors of a city to "frame, adopt and amend its charter," the implied authority exists to vote upon alternative propositions, or substitute sections when submitted, and when a majority expresses its preference for them, the electors' choice in that particular should be recognized in the canvass, and adopted without discrimination as to the size of the majority.

Without questioning the authorities cited in support of the plenary powers of municipalities over their local affairs, they are nevertheless subject, in framing their charters under which those powers may be exercised, to the Constitution and general laws of the State, and the home rule law was enacted in compliance with an

express constitutional requirement that the legislature provide a general law for their incorporation. In framing or amending a municipal charter, the will of the majority can only be recognized when clearly expressed in compliance with the statute. In the instant case it was neither in compliance with the statute nor clearly expressed. As before stated, the statute does not contemplate nor provide the machinery for voting on alternative propositions, and the arguments of counsel touching the result in this case illustrate the importance of such provision where the submission of alternatives is authorized. Counsel for defendant point out that less than half the votes cast in favor of the charter were cast in favor of the so-called "amendment," and say:

"The charter itself carried by a vote of four to one, while the amending proposition had but a small majority, which shows clearly that the charter itself would have carried regardless of the opportunity for amendment"

—while counsel for plaintiffs contend that those who voted on the question of adoption or rejection of the charter as a whole and failed to vote on the so-called "amendment" did not vote for or against the paving proposition at all, and state:

"The question was submitted in such a way that several different methods of determining the vote may be used."

This is illustrated at considerable length in their brief, showing various results which might be reached through possible methods of canvassing the vote as cast, concluding with the one most acceptable to plaintiffs, which is as follows:

"There is still another way to figure the vote on the charter and alternate paving proposition. Two thousand four hundred thirty-six votes were cast in favor of the alternate paving proposition. It is claimed 2,031 were cast against it. If that is so, the 2,031 votes were

cast for the paving proposition in the charter, but out of the 2,031 votes, 996 were against the charter and the paving proposition contained in it.    These votes should have been deducted from the 2,031 votes, leaving 1,035 votes for the paving proposition contained in the charter as submitted, because, being against the charter, they certainly were against the paving proposition embraced in it.    This would leave a majority in favor of the so-called 'amendment' of 1,401 votes of a total vote of 3,471 votes, of which more than three-fifths were in the affirmative."

As before noted, the legislature has nowhere authorized, either directly or indirectly, the submission at the same time of more than one proposed charter, nor proposed alternative sections of a proposed charter, and consequently has made no provision for the conduct and canvass of such an election.    For the court to recognize a vote upon alternative sections as valid and determine between the plausible contentions of opposing counsel as to how the same should be counted and canvassed would be to legislate, and thereby assume the powers of a co-ordinate department of the State government.

The proposed charter in its entirety was legally submitted to the electors for a "Yes" or "No" vote upon the question of its adoption, and received an affirmative vote of 4 to 1.    It is not shown that the majority, or even a single elector, was deceived or misled by the manner of its submission into voting contrary to intention upon that proposition.    The city is now governed, and its affairs administered, by authority of this charter, under a commission form of government, and this bill seeks to restrain certain of its officers from exercising official duties authorized by the charter, on the ground that a certain portion of that charter was not legally adopted, and the certificate of election of the canvassing board was false in fact, thus indirectly attacking the decision and official certifica-

.tion of an election board. If at any time any portion of this charter proves unsatisfactory to a majority of the electors, it is readily within their power to amend it in a manner pointed out in the act.

We discover no reason for disturbing the decree of the Jackson county circuit court in chancery dismissing plaintiff's bill of complaint, and the same is hereby affirmed, with costs to defendants.

Stone, C. J., and Kuhn, Ostrander, Bird, Moore, Brooke, and Person, JJ., concurred.