CARL J. GUNTERT, LEO B. RODBY, JR., VICTOR K. BOYD, JR., TADAO OKIMOTO, TURK T. TOKITA, AND YONETO YAMAGUCHI *v.* WILLIAM S. RICHARDSON, LIEUTENANT GOVERNOR OF HAWAII.

No. 4436.

July 27, 1964.

Tsukiyama, C.J., Cassidy, Wirtz, Lewis and Mizuha, JJ.

*Per Curiam.* This is a submission upon an agreed statement of facts.[1] The plaintiffs, who are individual residents, taxpayers and voters of districts hereinafter noted, aver that no further election of members of the

[1] R.L.H. 1955, chapter 227.

State Legislature should be held under existing provisions of law. Defendant, the Lieutenant Governor of Hawaii, charged by law with the responsibility for the conduct of elections, contends that to attempt to change the election process at this time would be contrary to the best interest of the public and that there should be no interference with the 1964 elections. Defendant further avers "that this Court lacks jurisdiction to order a new election or to reapportion the legislature prior to the exercise of reasonable efforts of the people and of their elected representatives, acting under the provisions of the State Constitution, to adopt and approve an apportionment plan submitted to them either by a constitutional convention or by the legislature in the form of a proposed amendment to the Constitution."

For present purposes we can assume the invalidity of the composition and apportionment of the State Legislature, in whole or in part. So assuming, we nevertheless agree with the defendant that we should not interfere with the 1964 elections. There is ample precedent for our refusal to so interfere.

In *Sincock* v. *Terry,* 210 F. Supp. 396 (Oct. 16, 1962), a three-judge federal court in Delaware considered the situation there presented with respect to the November 1962 election. The action had been commenced on June 5, 1962, and the court had stayed the proceedings until August 7, 1962 to enable the legislature to propose a constitutional amendment. 207 F. Supp. 205. In the second opinion reported in 210 F. Supp. 396 the court noted that a constitutional amendment had been proposed and denied a preliminary injunction, thereby permitting the holding of the November 1962 election. As a result, it was the constitutional amendment adopted in 1963 which finally came before the court. It was held invalid, 215 F. Supp. 169, *aff'd sub nom. Roman* v. *Sincock,* 377 U.S. 695 (June

15, 1964). The Supreme Court nevertheless left it to the court below to determine whether the 1964 election might be held under the invalid 1963 amendment, saying:

"* * * Acting under general equitable principles, the court below must now determine whether it would be advisable, so as to avoid a possible disruption of state election processes and permit additional time for the Delaware Legislature to adopt a constitutionally valid apportionment scheme, to allow the 1964 election of Delaware legislators to be conducted pursuant to the provisions of the 1963 constitutional amendment, or whether those factors are insufficient to justify any further delay in the effectuation of appellants' constitutional rights. * * *"

In *Lisco* v. *McNichols*, 208 F. Supp. 471 (Aug. 10, 1962), a three-judge federal court found that the record was inadequate for devising of a court plan of reapportionment, and that "in view of the magnitude of the task, the time is wholly inadequate." Final adjudication was postponed until holding of a further hearing. The District Court concluded that the case was not one for temporary injunctive relief "and that there should be no impediment to the orderly conduct of the election or interference with the electorate in the free exercise of their opinions on the initiated measures [for constitutional amendments effecting reapportionment] at the coming election * * *." The cause was continued until after the November 1962 election. After an extended trial and a further opinion, 219 F. Supp. 922, the case came before the Supreme Court *sub nom. Lucas* v. *Colorado General Assembly*, 377 U.S. 713 (June 15, 1964). The Supreme Court approved the action below as to the November 1962 election, saying: "Because of the imminence of the November 1962 election, and the fact that two initiated proposals relating to legis-

lative apportionment would be voted on by the State's electorate at that election, the District Court properly stayed its hand and permitted the 1962 election of legislators to be conducted pursuant to the existing statutory scheme." Disagreeing with the court below as to the validity of the constitutional amendment, adopted at the November 1962 election, the Court remanded the case for determination "whether the imminence of the 1964 primary and general elections requires that utilization of the apportionment scheme contained in the constitutional amendment. be permitted, for purposes of those elections * * *."

Previously the Court had stated: "* * * And we conclude that the fact that a practicably available political remedy, such as initiative and referendum, exists under state law provides justification only for a court of equity to stay its hand temporarily while recourse to such a remedial device is attempted or while proposed initiated measures relating to legislative apportionment are pending and will be submitted to the State's voters at the next election."

We note that the Supreme Court has said that "once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan." *Reynolds* v. *Sims,* 377 U.S. 533 (June 15, 1964). But the Court continued in that case:

"* * * However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In

> awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree. * * *"

In the light of the decisions handed down by the United States Supreme Court on June 15, 1964, we take cognizance of the indisputable invalidity of Article III, section 2 of the State Constitution, relating to the composition and apportionment of the State Senate. The problems thus raised will be considered first from the standpoint of permanent reapportionment and then from the standpoint of a temporary reapportionment plan.

At least in the initial stages of the problem presented by the invalidity of this provision, the question whether such invalidity can be cured by act of the legislature itself, or requires an amendment of the State Constitution, is one of local law, not federal constitutional right. We note that the Supreme Court has said that "the delay inherent in following the state constitutional prescription for approval of constitutional amendments * * * cannot be allowed to result in an unpermissible deprivation of [the] right to an adequate voice in the election of legislators * * *." *Roman* v. *Sincock, supra.* But that was said in a case where, at the time of rendition of the Supreme Court opinion, the case had been pending for two years during which a constitutional amendment had been achieved but had proved invalid. We see no indication that the matter

of the machinery to be used to cure the invalidity of the Senate plan presents a federal question at the inception of Hawaii's efforts in that direction.

Viewing this as a local question we note that Article XV, section 2, paragraph 6 of the State Constitution provides that any constitutional amendment shall be approved by a majority of the votes tallied upon the question, constituting at least 35% of the voters, and specifically provides that "no constitutional amendment altering * * * the representation from any senatorial district in the senate shall become effective unless it shall also be approved by a majority of the votes tallied upon the question in each of a majority of the counties." The agreed statement sets out that the parties are in agreement that this provision "contains a built-in impediment which has the necessary effect of perpetuating inequality in senatorial representation, and therefore is violative of the equal protection clause of the 14th Amendment * * *." Since the parties are in agreement, no justiciable controversy is presented as to this matter, and perhaps that would be true at this stage in any event.[2] The point now of importance is that the quoted provision plainly contemplates that any change in the representation from any senatorial district will be by constitutional amendment. Even if the added provision as to a majority vote in a majority of the counties should prove to be unconstitutional, that would not render invalid the requirement that the change be by constitutional amendment.

If any step is to be taken toward a constitutional amendment or amendments it should be done before the 1964 elections, in order to avoid delay in obtaining a vote of the people as provided by Article XV. However, the

---

[2] Cf., West v. Carr, 370 S.W.2d 469 (Tenn.), appeal dismissed and certiorari denied, 378 U.S. 557.

legislature is now in special session. We must and do assume that the legislature will take suitable action. That possibility provides justification "for a court of equity to stay its hand temporarily."[3]

Plaintiffs pray for a judgment declaring that the composition and apportionment of both the Senate and House of Representatives are violative of the equal protection clause. As to the House of Representatives there is involved a question, as hereinafter noted, as to the sufficiency of the agreed statement to present the point sought to be adjudicated. In any event we have no occasion to render a declaratory judgment in this case as to the validity or invalidity of the composition and apportionment of the legislature, apart from the plaintiffs' rights with respect to a future election or elections. *Cf., Harris* v. *Shanahan*, 192 Kan. 183, 387 P.2d 771, 795 *et seq.; Baker* v. *Carr*, 206 F. Supp. 341, 350 (June 22, 1962). We shall have more to say on this at a later point in this opinion.

The above-cited opinion in *Baker* v. *Carr* was the first one[4] rendered after the remand of the case decided in 369 U.S. 186 (March 26, 1962). After holding unconstitutional the reapportionment effected by 1962 acts of the Tennessee legislature, the three-judge court considered the remedy and decided to permit 1962 elections under the invalid statutes in order that the legislature so elected might make another attempt to arrive at a constitutional apportionment. Here we take a similar approach, though the situation is different in that a constitutional amendment is the method prescribed by Hawaiian law for changing the composition and apportionment of the Senate.

Plaintiffs in effect urge that, even if a constitutional

---

[3] *Lucas* v. *Colorado General Assembly, supra.*

[4] For a later opinion in the same case see 222 F. Supp. 684.

amendment is the means of accomplishing a permanent reapportionment, once this court has declared invalid the existing apportionment provisions of the State Constitution the legislature will be authorized to institute a temporary reapportionment plan. At the oral argument plaintiffs stated that they do not ask for an immediately effective order as to the 1964 elections. In the submission plaintiffs had asked, *inter alia,* for an injunction staying the 1964 elections unless the legislature adopted a valid reapportionment plan for those elections.

In the first place, as we have said, any judgment or decree of this court would be directed only to a future election or elections, and would not be in the form of a bare adjudication of present invalidity. Plaintiffs themselves urge that "a legislature though elected under an invalid apportionment scheme, is nonetheless, a legislature empowered to act." We agree.[5] Any judgment or decree of this court would operate *in futuro.* To enter an adjudication of present invalidity and at the same time recognize the continued powers of the legislators heretofore elected would be inconsistent. Moreover the Lieutenant Governor has standing in this case only as a State official charged with the conduct of elections.

In the second place, in order to interfere with the 1964 elections on the theory that a temporary reapportionment plan should be put into effect for those elections, we would have to be convinced that plaintiffs' rights under the federal constitution require this mutation of the State Constitution without even awaiting a reasonable opportunity for the State Constitution to operate as intended. We lay that question aside because there are other considerations which make it unnecessary to decide it, at least at this time.

---

[5] *Harris* v. *Shanahan, supra,* 192 Kan. 183, 387 P.2d 771, 795 *et seq.*

Under general equitable principles this court will not render a decree it cannot enforce. We would not enjoin the holding of the 1964 elections under the existing apportionment unless prepared to supply a temporary reapportionment plan, if the legislature should not do so, and *supply it in time*. The election processes are not to be disrupted altogether. September 3, 1964 is the closing date for filing nomination papers,[6] and any temporary reapportionment plan would have to be evolved and finally settled in time to provide a proper period for filing nomination papers before September 3d. We turn now to plaintiffs' alternative prayers for at-large elections in 1964 for all seats, or for institution of a judicially adopted temporary reapportionment plan for the 1964 elections.

A serious question is presented concerning the rights of those senators who were elected in 1962 for a term ending in 1966. As hereinafter noted, one of these senators has sought to intervene. He has not received a hearing as to his rights. Moreover, we have found no indication in the case law that termination of the terms of incumbent senators could be effected as part of a temporary reapportionment plan.[7]

Reallocation of the open seats, that is, those which normally would be filled at the 1964 elections, would involve the question whether population is the only permissible basis of apportionment, as asserted by plaintiffs. That knotty problem is directly involved in plaintiffs' attack on the apportionment of the House of Representa-

---

[6] Thirty days before the first Saturday in October. R.L.H. 1955, §§ 11-92, 11-97.

[7] *Moss* v. *Burkhart*, 220 F. Supp. 149 (W.D. Okla.), *aff'd sub nom. Williams* v. *Moss*, 378 U.S. 558 (June 22, 1964), involved a permanent reapportionment effected by court order for a decennial period, unless the legislature should reapportion itself. This order was entered after opportunity had been given to effect reapportionment by other means but such efforts had failed.

tives. It is incidentally involved in any temporary reapportionment plan for the 1964 elections. This is another problem that cannot be solved in haste.

A submission on an agreed statement of facts precludes the taking of evidence.[8] We are confronted at the start with the question whether the agreed statement contains sufficient facts to permit an adjudication on the question whether registered voters are a permissible basis of apportionment of the House of Representatives. The constitution's use of registered voter figures as the basis of apportionment of the House lies at the heart of plaintiffs' attack on the present method. We have heard argument on the question whether the court, being precluded from taking evidence, has enough facts and can evaluate the facts, for example, as to differences between population and registered voter figures. This question involves the exercise of our discretion under the proviso of section 227-1, R.L.H. 1955.[9]

The agreed statement sets out 1960 population figures from the Federal Census, and 1958 and 1962 Registered Voter figures. These show that the ratio of registered voters to population varies greatly from district to district in some instances, but of course 1958 and 1962 registered voters and 1960 population are not comparable figures. Appended to plaintiffs' brief is a table showing 1960 registered voters and 1960 population but this is not part of the agreed statement and cannot be used unless the parties are in agreement on it. In any event, the agreed statement affords no means of analyzing the composition

---

[8] 3 Am. Jur. 2d, *Agreed Case*, § 14; *cf.*, *Butterfield* v. *Bon*, 12 Haw. 337.

[9] "* * * provided, that the supreme court may, in its discretion, require the case to be first submitted to a circuit judge at chambers subject to appeal."

of the population or the registered voter figures,[10] in order to determine whether there is some explanation for the disparity in the ratios of registered voters to population among the districts, other than indifference of the voters in some districts to their rights and assiduous pursuit thereof in other districts. The agreed statement affords no means of determining whether registered voters are a fair indication of qualified voters.

We are troubled by other aspects of the case, as well. Except for the Lieutenant Governor, the parties are all from the Fifth Senatorial District. In so saying we have excluded from consideration three persons named as plaintiffs who, being residents, taxpayers and voters in the counties of Hawaii, Kauai and Maui, have no justiciable interest as plaintiffs.[11] The form of action—a submission on agreed statement of facts—affords no opportunity for others to intervene in the usual manner. Representative Jack K. Suwa, a taxpayer and voter of the First Representative District (Puna, Hawaii), who is a member of the House of Representatives from that district, and Senator Julian R. Yates, a taxpayer and voter of the Second Senatorial District (West Hawaii), who is a member of the Senate from that district, elected for a term ending

---

[10] Defendant contends, citing *Bishop and Mahiko* v. *Territory*, 35 Haw. 608, 618, that this court can take judicial notice of public records brought to the court's attention by counsel. If so, that does not mitigate against the view above stated that the problem involved cannot be solved in haste. We are without information as to whether there are public records that would permit analysis of the population and registered voter figures without the aid of testimony.

[11] Plaintiffs contend that the representative and senatorial districts in which these parties reside and vote are overrepresented.

It has been suggested that these parties have an interest as taxpayers in preventing an election on a malapportioned basis as an unnecessary expenditure of public funds, and in preventing other waste of public funds. However, that contention does not go to the heart of the controversy or show a justiciable interest when all the circumstances are considered. *Cf.*, *Doremus* v. *Board of Education*, 342 U.S. 429.

in 1966, have sought to intervene.[12] We took their motion for leave to intervene under consideration, but have reached the conclusion that we cannot grant it because of the rigidity of an action submitted by agreement. We can only afford them the opportunity of coming in and joining in the submission if satisfied with the facts as stated, or if a new state of facts can be agreed upon by all. *Cf., Consolidated Realty Corp.* v. *Koon,* 216 N.C. 295, 4 S.E.2d 850, citing *Wagoner* v. *Saintsing,* 184 N.C. 362, 114 S.E. 313; *Coe* v. *Zwetchkenbaum,* 89 R.I. 358, 153 A.2d 517. See also *Kahua Ranch, Ltd.* v. *Hustace,* 43 Haw. 233, 234-35.

Presently, the Lieutenant Governor is the sole party contending with the Fifth District voters. The Lieutenant Governor appears by private counsel, not by the Attorney General. The latter has issued an opinion contrary to the views presented here by the Lieutenant Governor, and has been permitted to appear as an *amicus curiae.* His argument supports plaintiffs' position.

In this situation we are not satisfied that there is a sufficiently broad base of representation to justify the court in proceeding to adopt a temporary reapportionment plan even if we have the power to do so. We see no reasonable possibility that the representation could be broadened and all the questions involved could be resolved by a date sufficiently in advance of the September 3, 1964 closing date for filing nomination papers. We have concluded that on this record and considering the exigencies of time, we are not in a position to interfere with or control the 1964 elections, regardless of our power to do so.

As to the validity of the apportionment of the House of Representatives, the first point for consideration is

---

[12] Other motions for leave to intervene, as well as a request for leave to appear as *amicus curiae,* were received too late to permit the applicants to participate at the hearing held herein on July 25, 1964.

whether registered voters may be used as the basis of apportionment, as provided by the constitution. This is a question not now decided, for reasons already stated.

We note plaintiffs' argument that even if the House of Representatives is not malapportioned, the invalidity of the apportionment of the Senate invalidates that of the House of Representatives as well. This is a point to be considered in connection with any reapportionment plan hereafter adopted,[13] but affords no sufficient basis for an order of this court regulating the 1964 elections.

Accordingly all prayers for judicial action interfering with the 1964 elections are denied and decision on other matters, including the question whether this submission is a suitable vehicle for adjudication thereof, is held in abeyance in order to afford the parties an opportunity to file an amended submission if they are of the opinion that the problems presented by the instant submission, to which we have called attention, can be satisfactorily resolved.

*Charles M. Tonaki* (*Oshiro, Burns, Rubin & Tonaki* of counsel) for plaintiffs.

*Robert G. Dodge* for defendant.

*J. Garner Anthony, amicus curiae.*

*Bert T. Kobayashi,* Attorney General, State of Hawaii, *amicus curiae.*

*Kazuhisa Abe* (*Ernest Kubota* of counsel) for Jack Suwa and Julian R. Yates, on motion to intervene.

---

[13] *Lucas* v. *Colorado General Assembly, supra,* 377 U.S. 713 (June 15, 1964) ; *Maryland Committee* v. *Tawes,* 377 U.S. 656 (June 15, 1964).