SHUNICHI KIMURA, RALPH H. KIYOSAKI and HERBERT T. MATAYOSHI, on behalf of themselves and all others similarly situated, *v.* COUNTY OF HAWAII and MARGARET M. KAAUA, in her capacity as County Clerk of the County of Hawaii.

No. 4595.

August 27, 1966.

RICHARDSON, C. J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

*Per Curiam.* This case, submitted on an agreed statement of facts under the provisions of R.L.H. 1955, § 227-1, brings before this court a contest over the outcome of a special election held on August 13, 1966 on a proposed charter for the County of Hawaii.

A duly constituted charter commission, after extensive hearings and work, submitted, in accordance with the provisions of R.L.H. 1955, § 143A-8 (Supp. 1965), a pro-

posed charter to the county board of supervisors.[1] The board, in turn, submitted several proposed alternatives to various sections of the charter as prepared by the commission. The commission rejected five of the board's proposals.[2] After due notice and publication of the charter with the alternatives proposed by the board which were not accepted by the commission the election was duly set, noticed for, and held on August 13, 1966.

The ballot for the election was prepared by the county clerk.

The first part of the ballot, following general instructions for marking the same and for obtaining a new ballot for a spoiled ballot, was as follows:

**"Note:** If you vote for either Part I or Part III, DO NOT VOTE on any alternative proposals listed below. Your vote on the alternative proposals will not be counted if you have voted in either Part I or Part III.

---

[1] § 143A-8 provides:

*"Submission of proposed charter to legislative body of the county.* Within one year of its appointment, the commission shall submit a report in writing on its activities, findings and recommendations to the legislative body of the county together with a draft of the proposed charter. The legislative body of the county may in turn propose one or more sections as alternative or alternatives to any part of the proposed charter and shall return the charter with the alternatives to the commission for its study within thirty days after it has received the proposed charter from the commission." [L. 1963, c. 73, pt. of s. 2.]

[2] § 143A-9 prescribes the applicable procedure as follows:

*"Submission of proposed charter to county clerk.* If the legislative body of the county proposes no alternative sections to the charter, it shall submit a draft of the proposed charter to the county clerk within thirty days after it has received the charter from the commission. If, however, alternatives are submitted by the legislative body of the county to the commission, then the commission shall accept or reject the alternatives and shall submit a draft of the proposed charter together with any alternatives proposed by the legislative body of the county which have not been accepted by the commission and incorporated in its draft, to the county clerk within thirty days after the charter has been returned to it." [L. 1963, c. 73, pt. of s. 2.]

**"VOTE FOR ONE (1) ONLY**

**"PART I.**

> I am in favor of the County of Hawaii Charter as proposed by the Hawaii Charter Commission. □

**"PART II.**

> I am in favor of the County of Hawaii Charter proposed by the Hawaii Charter Commission but modified by those alternative proposals of the Board of Supervisors which I have marked below. □

**"PART III.**

> I am not in favor of a charter for the County of Hawaii. □ "

The foregoing was followed by instructions and a note, reading as follows:

**"Instructions:** There are 5 alternative proposals below. In selecting your choice from the 3 proposals submitted by the Board of Supervisors in the Council Representation VOTE FOR ONE (1) ONLY[3]

If you agree with the alternative proposals by the Board of Supervisors on the Board of Adjustment and Appeals of the Planning Department and the Board of Water Supply, place an $\times$ in the block following the proposal.

**"Note:**

Each alternative proposal is also followed by a statement in italics. These statements are for information only and are

---

[3] At the argument, members of the court raised the question whether the board of supervisors was authorized to submit three proposals on the same section or subject matter. This question was not raised by the submission, and as will appear is not decided.

brief summaries of the provisions of the Hawaii Charter Commission's proposals which would be changed by the alternative proposals.

"Indicate which alternative proposal or proposals you favor ONLY if you have voted in Part II above. If you have voted in Part I or Part III DO NOT VOTE on any alternative proposals below."

The instructions above noted were followed by the alternatives submitted by the board of supervisors and rejected by the commission, as follows:

"COUNCIL REPRESENTATIVE—VOTE FOR ONE (1) ONLY

"ALTERNATIVE PROPOSAL I. Section 3-3—THREE (3) COUNCILMEN FROM THE THIRD, FOURTH AND FIFTH REPRESENTATIVE DISTRICTS AND FOUR (4) COUNCILMEN FROM THE FIRST AND SECOND REPRESENTATIVE DISTRICTS.

*(THE CHARTER COMMISSION Proposes that seven (7) Councilmen be elected from seven (7) Council Districts)*

"ALTERNATIVE PROPOSAL II. Section 3-3—SEVEN (7) COUNCILMEN NOMINATED FROM SEVEN (7) COUNCIL DISTRICTS AT THE PRIMARY ELECTION AND ELECTED AT LARGE IN THE GENERAL ELECTION.

*(THE CHARTER COMMISSION Proposes that seven (7) Councilmen be elected from seven (7) Council Districts)*

"ALTERNATIVE PROPOSAL III. Section 3-3—SEVEN (7) COUNCILMEN ELECTED AT LARGE.

*(THE CHARTER COMMISSION Proposes that seven (7) Councilmen be elected from seven (7) Council Districts)*"

## "BOARD OF ADJUSTMENT AND APPEALS OF THE PLANNING DEPARTMENT—VOTE FOR ONE (1)

"ALTERNATIVE PROPOSAL IV. Section 6-3(d)—TO MAKE THE BOARD OF ADJUSTMENT AND APPEALS AN ADVISORY BODY TO THE COUNCIL. ☐

*(THE CHARTER COMMISSION Proposes that the Board of Adjustment and Appeals be a decision making body on Subdivisions, Zoning, Variances and Special Exceptions.)"*

## "BOARD OF WATER SUPPLY—VOTE FOR ONE (1)

"ALTERNATIVE PROPOSAL V. Section 7-4—TO ALLOW THE BOARD OF WATER SUPPLY TO REMAIN AS IT IS. ☐

*(THE CHARTER COMMISSION Proposes that the Board of Water Supply be made a Department of the County of Hawaii and its Fiscal Policy be controlled by the Council.)"*

The county had 26,662 registered voters. There were 14,771 votes cast in the election. Of these, 2,103 were rejected as spoiled ballots. Of the 12,668 votes counted in the election, votes were cast in favor of the various items voted on as follows:

TOTAL VOTES
COUNTED

**PART I.**

I am in favor of the County of Hawaii Charter as proposed by the Hawaii Charter Commission _____ 3,614

**PART II.**

I am in favor of the County of Hawaii Charter proposed by the Hawaii Charter Commission but modified by those alternative proposals of the Board of Supervisors which I have marked below. _____ 7,222

## PART III.

I am not in favor of a charter for the County
of Hawaii. _____ 1,832

## COUNCIL REPRESENTATION.

**Alternative Proposal I.** Section 3-3—three (3)
Councilmen from the Third, Fourth and Fifth
Representative Districts and four (4) Council-
men from the First and Second Representative
Districts. _____ 281

**Alternative Proposal II.** Section 3-3—seven (7)
Councilmen nominated from seven (7) Council
Districts at the Primary Election and Elected
at Large in the General Election. _____ 1,196

**Alternative Proposal III.** Section 3-3—seven
(7) Councilmen Elected at Large. _____ 5,065

## BOARD OF ADJUSTMENT AND APPEALS
## OF THE PLANNING DEPARTMENT.

**Alternative Proposal IV.** Section 6-3(d)—To
make the Board of Adjustment and Appeals
an advisory body to the Council. _____ 1,250

## BOARD OF WATER SUPPLY.

**Alternative Proposal V.** Section 7-4—To allow
the Board of Water Supply to remain as it is.     5,427

The county clerk submitted a tabulation of the results
of the election to the county chairman and board of super-
visors on August 15, 1966. On August 17, 1966 she
forwarded to the chairman and the board a further com-
munication certifying that in accordance with an opinion
rendered by the county attorney on August 5, 1966,[4] "No
Parts covering the adoption or rejection of the Charter

---

[4] The main thrust of the opinion was that votes for Part I and Part
II could not be added in determining the tally of the votes to be cast
in the forthcoming election.

or Alternatives by the Board of Supervisors received a *Majority Vote* of the Votes Cast. Because of this, neither the Proposed Charter nor any of the alternates were adopted—therefore the Charter was defeated."

The plaintiffs under the submission allege they are registered voters in the County and State of Hawaii. One of them, Ralph H. Kiyosaki, has been the chairman of the charter commission. It is further alleged that Plaintiff Shunichi Kimura, who is the incumbent chairman and Executive Officer of the Board of Supervisors of Hawaii County, intends to seek the elective position of the chief executive officer of the Government of the County of Hawaii and that Plaintiff Herbert T. Matayoshi intends to seek a legislative position in the Government of the County of Hawaii and that because of the existing controversy there is uncertainty as to the nature of the office to be sought by each and also, in respect to Plaintiff Matayoshi, there is uncertainty as to whether he will be running at large or from a district. The prospective candidates must file for the upcoming primary election on or before September 1, 1966.

The defendants are the County of Hawaii and the county clerk.

Plaintiffs' principal contention, as set out in the agreed statement of facts, is "That a proper interpretation of Section 143A-10 and simple logic require that the votes cast in favor of Part I and Part II of the Ballot (Exhibit A) must be added together in determining whether a majority of the electors of the County of Hawaii voted in favor of a charter for said County." They further contend that in the election the commission charter was approved by the electors except that, (1) what was designated on the ballot as Alternate Proposal III, providing for at-large election of seven councilmen, was substituted for the district representative plan contained in the com-

mission charter, and (2) what was designated on the ballot as Alternate Proposal V, providing for continuance of the Board of Walter Supply under present laws, was substituted for the plan contained in the commission charter which would have given the Board of Water Supply less independence.[5]

As a consequence of the foregoing contentions plaintiffs submit that this court should enter a judgment declaring that the special charter election mandated a charter for the County of Hawaii containing the provisions of the charter proposed by the commission as modified by Alternatives III and V, and that the county clerk should be ordered to certify that such is the true result of the election.

Defendants' principal contention is that the votes cast for Part I and Part II of the ballot cannot be added to produce a majority in favor of a charter and that since neither Part I nor Part II represented a majority of the votes cast in the election there was no mandate of any form of charter government for the County of Hawaii and that a judgment so declaring should be entered herein.

Preliminarily we note that two voters, who are not parties to this action, namely Frank De Luz III and William Ramos, the latter being an announced candidate for the Hawaii County Board of Supervisors, have sought in various ways to obtain a hearing, which they would prefer to be held in the Circuit Court, it being contended by them that the form of ballot used in the election was illegal; that even if the ballot was legal "none of the

[5] Plaintiffs' case for Alternatives III and V is premised on the proposition that § 143A-10 makes §§ 11-70 and 144-17 of the election laws applicable, from which it is urged that the adoption of an alternative or alternatives to the corresponding section or sections in the commission charter can be determined on the basis of the plurality of votes cast. In view of the basis upon which we are disposing of the cause, we do not rule on the issue, but we believe we should state that we find plaintiffs' argument on the point unconvincing.

proposed forms of charter received a majority of the votes cast by the electorate as required by law"; that by the alternative proposals and combinations of proposals "sixteen independent, separate and different forms of charter" were presented, and that it was requisite for the adoption of a charter that one of the sixteen forms receive a majority vote. It is sufficient at this time to state that, because of the form of the action before us, which affords no opportunity for others to intervene in the usual manner,[6] and because of the short time that has been available for briefing and argument, we address ourselves to a very narrow question which we find to be dispositive of the case. We need not reach the questions on which Mr. De Luz and Mr. Ramos seek a hearing. We consider only the interpretation and effect of the ballot as drawn and used at the election of August 13, 1966. Consequently we will deny the motion filed herein by these two voters to dismiss the case submitted on the agreed statement of facts.

The charter was framed and submitted with alternatives proposed by the Board of Supervisors, under R.L.H. 1955, c. 143A as amended (1965 Supp.), the same being S.L. 1963, c. 73, as amended by S.L. 1965, c. 65. Section 143A-10, as amended, reads as follows:

"§ 143A-10. *Publication and submission to electors.* The county clerk shall provide for the submission of the proposed charter with any alternatives as provided by section 143A-9 to the qualified electors of the county for approval at a general election or special election to be held on such date determined by the commission. The commission shall provide for the publication of the proposed charter with any alternatives, twenty-one days before such election, in a newspaper of gen-

---

[6] *Guntert* v. *Richardson*, 47 Haw. 662, 673-74, 394 P.2d 444, 450-51.

eral circulation within the county. If a majority of the electors voting on the charter in the election shall cast their ballots in favor of adoption of the charter, the charter shall become the organic law of the county and shall supersede any existing charter and all laws affecting the organization and government of the county which are in conflict therewith. The proposed charter shall be considered approved by the electors if a majority of the electors voting on the charter in the election cast their ballots in favor of adoption of the charter. The general laws and rules governing elections so far as applicable and not inconsistent with the provisions of this chapter, shall apply to elections held pursuant to the provisions of this chapter."

As seen, at the special election there was only one ballot, dealing with the charter and the alternatives. There is no question as to the number of electors "voting on the charter in the election." The county clerk has certified the number of votes cast[7] as 14,771, which is the number voting on the charter in the election.

The number voting in favor of Part I was 3614; in favor of Part II, 7222; and in favor of Part III, 1832. In contending that the votes in favor of Part I and Part II should be added together to make 10,336, which would be a majority of the total of 14,771, plaintiffs necessarily are construing the ballot to mean that it merely called for an indication of a preference as to the form of the charter, and that the voters were really saying that even if they did not get the form of charter they wanted nevertheless they were in favor of a charter—that whatever form emerged as a result of the election was accepted by these 10,836 voters.

---

[7] The term "votes cast" is defined by R.L.H. 1955, § 11-60, which pursuant to R.L.H. 1955, § 143A-10 is applicable along with other election laws. The "votes cast" include blank ballots deposited in the ballot box, and ballots later rejected as spoiled.

If it was intended to put before the voters the question whether they would or would not accept whatever form of charter was framed as a result of the balloting on the alternative proposals (assuming without deciding that such a proposition could have been put) more inept language for putting that question could hardly have been found than appears on the ballot. By Part I the voters were asked whether they were in favor of, not "the charter," or "the proposed charter," but instead in specific terms "the County of Hawaii Charter as proposed by the Hawaii Charter Commission." Furthermore, a voter in Part I was instructed not to vote on any of the alternative proposals, that if he did so his vote on the alternative proposals would not be counted, and that in order to vote on the alternative proposals he must vote in Part II. These instructions, appearing on the ballot, informed the voter in definite terms that his vote in Part I was a vote for the Commission form of charter without any alternatives.

Plaintiffs contend that: "The test as to the form in which a public question is submitted is whether the voters are afforded an opportunity to express and do fairly express their will." *Turner* v. *Board of Educ. of Scotsville Independent School Dist.,* 266 S.W.2d 321, 322 (Ky. Ct. App.); *Nowers* v. *Oakden,* 110 Utah 25, 169 P.2d 108, 116; *Hill* v. *Milander,* 72 So. 2d 796, 798 (Fla.). Even if that be the test we cannot find that the 3614 voters in Part I accepted any charter other than the Commission form of charter. These 3614 votes can be counted in favor of adoption of a charter only if all the alternatives were defeated. No charter with alternatives could be deemed adopted by or on the basis of these 3614 votes.

Can the 7222 votes in favor of Part II be counted for a charter in the form proposed by the Commission without any alternatives, that is, if all alternatives were defeated as would be required in order to count the 3614 votes?

According to plaintiffs those voting in Part II did not necessarily have to mark any of the alternatives—they were merely given the opportunity to do so, an opportunity which they did not have if they voted in Part I. We may assume this to be true, without so deciding. The difficulty still is that at least 5427 who voted in Part II did mark one or more alternatives.[8] When they did so they indicated a definite intent. They stated that they favored the charter proposed by the Commission "but" modified as marked. We cannot read this as a vote for a charter that was not modified as marked. If it be assumed that none of the alternatives carried (as must be assumed in order to count the 3614 Part I votes), then the upwards of 5000 votes that were cast for a charter modified as marked in a particular way cannot be counted.

The word "but" signifies an exception to that which precedes it. *In Re Naftzger's Estate,* 24 Cal. 2d 595, 150 P.2d 873, 875; *Evans* v. *McCabe,* 164 Tenn. 672, 52 S.W.2d 159, 160. The word "alternative" implies a choice whereby one proposition is substituted for another. *Cf., Apple* v. *Zemansky,* 166 Cal. 83, 134 Pac. 1149, 1153; *Maher* v. *City of Jackson,* 191 Mich. 266, 157 N.W. 561. Thus an elector voting in Part II and marking an alternative or alternatives was saying, under this ballot, that he did not favor the Commission form of charter altogether; that there was an exception to his favorable vote thereon; that his vote was in favor of the Commission form of charter with a modification whereby the alternative or alternatives marked by him would be substituted for the Commission proposal as to the particular subject matter. "I am in favor of the County of Hawaii charter proposed by the Hawaii Charter Commission but modified by those alternative proposals of the Board of Supervisors which I have

---

[8] This is the number voting for Alternative Proposal No. V, the highest number voting for any of the alternative proposals.

marked below." This was clear and explicit. A ballot marked in Part II, and also marked, for example, in favor of Alternative Proposal V for an independent Board of Water Supply, could not be considered to have approved a charter in the Commission form giving the Board of Water Supply less independence. On the other hand, a ballot marked in Part I in favor of the charter as proposed by the Commission could not be considered to have approved an independent Board of Water Supply. This example shows that Part I and Part II votes cannot be added together. The ballot is too explicit to permit it.

Under the circumstances in which this case comes before us we will not endeavor to suggest what form of ballot could have been used which would have given the charter a better chance of passage. However, we call attention to the case of *Horn* v. *Allen,* 195 Cal. 121, 231 Pac. 1001, though not necessarily in agreement with it as being an exposition of the proper procedure under our statute. The case is of value because of the contrast it provides to what was done here. It will be noted that in that case Proposition 1 was not tied to any particular form of charter. The ballot was designed for two different steps. One was the framing of a charter, with or without the alternative presented by Proposition 2, as determined by the voters. The other was the approval of the charter in whatever form might emerge from the vote on Proposition 2. Does our statute permit of a ballot so framed? As has been stated, the circumstances in which this case comes before us do not permit us to address ourselves to that point. It is clear, however, that the ballot before us tied both the Part I and the Part II votes to a particular form of charter. None of them were votes cast for whatever form of charter might emerge as a result of the election.

The ballot here used is very similar to the one used in

Honolulu in 1958,[9] for the adoption of a charter under R.L.H. 1955, c. 149A, as amended by S.L. 1957, c. 277.[10] That statute provided for submission of the charter to the legislature for ratification after approval by the electors.[11] Chapter 143A, as amended by S.L. 1965, c. 65, does not provide for legislative ratification. However, in some respects the two statutes are similar. The history of the Honolulu charter illustrates the troublesome legal situation which has existed for eight years because of the provision for submission in charter elections of alternatives proposed by the legislative body of the county. The specific provisions needed for conducting the election when alternatives are submitted have been and remain lacking. While chapter 149A did provide that the charter commission should prescribe the form of ballot,[12] chapter 143A does not contain even this provision.

In Honolulu, a controversy arose shortly before the special charter election. The then city and county attorney rendered an opinion that votes cast in Part I and Part II could not be added together. The Charter Commission was of the contrary opinion. The votes cast for Part I proved to be a clear majority, and the question did not have to be resolved. In the present instance a controversy again arose shortly before the election, with the county attorney again rendering an opinion that votes cast in Part I and Part II could not be added together. This question now has been resolved as to this particular form of ballot. However, other questions may arise. It

---

[9] The Honolulu ballot and other matters concerning the Honolulu charter election are set out in the agreed statement, as supplemented by stipulation of the parties.

[10] However, the Honolulu ballot contained an instruction: "If you have voted in Part II above, you must indicate which alternative provisions you favor * * *." This instruction did not appear on the present ballot.

[11] R.L.H. 1955, § 149A-6, as amended by S.L. 1957, c. 277.

[12] R.L.H. 1955, § 149A-5, as amended by S.L. 1957, c. 277.

should be apparent, we think, that the best solution would be legislation supplying the details as to the form of the ballot, manner of voting, and vote required when alternatives are submitted, which are absent from the statute at this time.

In conformity with this opinion a judgment will be entered declaring that no charter for the County of Hawaii was adopted at the special election of August 13, 1966.

*Robert E. Bethea (Tom C. Ingledue* with him on the brief, *Carlsmith, Carlsmith, Wichman & Case* of counsel) for plaintiffs.

*Yoshito Tanaka,* County Attorney, County of Hawaii (*Robert T. Ito,* Deputy County Attorney with him on the brief) for defendants.

*Kazuhisa Abe* for movants.